## PEOPLE v. DORTHY.

·(Supréme Court, Appellate Division, Fourth Department. July 30, 1897.)

**1.** LARCENY—INDICTMENT.

Since an indictment is sufficient if it avers the offense as the statute defines it, an indictment for larceny of money received from R. was sufficient where it charged that defendant was the servant, agent, attorney, and bailee of R., and occupied a fiduciary relation to him, without setting forth the facts showing the agreement which constituted defendant such servant.

**2.** SAME—EVIDENCE.

Defendant was charged with stealing $250, the money of one R., with converting to his own use and embezzling such sum as the servant and bailee of R., and with feloniously appropriating it to his own use. It appeared that R. was a nonresident attorney and attorney in fact for T.'s heirs; that defendant was attorney for the executors; that R. had negotiations with defendant to represent his clients in an action to adjudge that T. died intestate as to half of his estate, and for partition; that the complaint in the action was signed by an attorney other than defendant, and defendant appeared for the executors; that defendant acted also, in conjunction with R., as counsel for the parties represented by R.; and that after trial before a referee R. paid defendant's draft on him for $250, which defendant kept. Defendant claimed that he had applied the money on account of services, while R. claimed the money was sent to pay the referee's and stenographer's fees, which amounted to about that sum. Held, that the judgment roll in such action was admissible.

**3.** WITNESS—CREDIBILITY—IMPEACHMENT BY CROSS-EXAMINATION.

In a criminal case it was improper to require defendant, as a witness in his own behalf, to testify on cross-examination, in effect, that he had been a member of a certain church in good standing, and had been expelled therefrom for some cause which the church deemed sufficient.

**4.** SAME.

In a prosecution against an attorney for larceny, it was improper to require him on cross-examination to make admissions and testify to facts showing that he was disbarred on charges tried before a referee and preferred by a bar association, accusing him of embezzlements and larcenies other than the one charged in the indictment.

**5.** SAME.

Though defendant in a criminal case, when a witness for himself, may be asked, on cross-examination, as to specific collateral facts or acts in his own career which tend to prove his moral degradation, he cannot be compelled to testify to the conclusions of others to prove such degradation, or to impeach him as a witness, except it be the conviction of a crime, or such confinement in prisons or jails as would indicate a conviction.

**6.** SAME.

Pen. Code, § 714, providing that a person convicted of a crime is a competent witness, but the conviction may be proved to affect the weight of his testimony, does not apply to a case where an attorney, as defendant in a larceny case, is compelled on cross-examination to show that he was disbarred on charges preferred by a bar association, accusing him of larcenies other than the one charged in the indictment.

Adams, J., dissenting.

Appeal from trial term, Monroe county.

John F. Dorthy was convicted of larceny at the Monroe trial term of the supreme court on November 7, 1896, and he appeals from the judgment, and from an order denying a motion for a new trial, made upon the minutes entered on the same day, and from an order disallowing the defendant's demurrer to the indictment entered on the 12th of October, 1896, and from an order made by the trial court on

the 8th day of June, 1897, denying the defendant's motion for a new trial on the ground of newly-discovered evidence.    Reversed.

At the conclusion of the people's case the defendant's counsel moved to dismiss the indictment, and each and every count therein, upon the ground that the evidence was insufficient to warrant a conviction; and upon the trial the defendant objected to the second count of the indictment, specifically because it did not allege sufficient facts under subdivision 2 of section 528 of the Penal Code to create the offense of larceny. The indictment contained three counts: First. Accusing the defendant of larceny in unlawfully and feloniously taking. stealing, and carrying away money from one William G. Rich, the owner thereof, with intent to defraud him, and to appropriate the same, etc. The second count,—that the defendant was employed in the capacity of servant, agent, attorney, and bailee of Rich, and as such servant, agent, attorney, and bailee then and there had in his possession and under his custody and control $250 in money, of the value of $250, of the money, property, evidence of debt and credit, things in action, and possession of the said William G. Rich, for and on account of the said William G. Rich; and the said John F. Dorthy on the day, etc., in the city of Rochester, county of Monroe, fraudulently and feloniously did take, make way with, and appropriate to his own use, without the assent of the said William G. Rich, said money, etc., with intent then and there to deprive the said William G. Rich of his said money and property and the use and benefit thereof. The third count charged the defendant with feloniously secreting, withholding, and appropriating to his own use the said money, with intent then and there to deprive and defraud the said Rich of the same. These several offenses were charged in the indictment as larceny in the second degree. The defendant was convicted of larceny in the second degree, and was sentenced to Auburn state's prison for the term of three years and two months. The defendant was an attorney and counselor at law transacting business at Rochester, N. Y. The complainant, William G. Rich, was an attorney at law residing at Woonsocket, R. I., and was attorney in fact for quite a number of persons who were heirs at law of Jonathan C. Taylor, formerly of Rochester, deceased. Taylor died in February, 1891, leaving a will, bestowing his property, valued at $20,000 and upward, upon his wife during her life, with the remainder, after her death, $1,000 to the First Congregational Church of Northbridge, Mass., and the balance to the American College & Educational Society at Boston, Mass. His will was duly admitted to probate, and Herman K. Phinney and Henry C. Heath were appointed and qualified as executors of the will. It was claimed by the heirs of Taylor that the will disposed of more than one-half his property to the corporations named, and was, therefore, void in respect to more than the half; and an action was commenced by John G. Rich and others, plaintiffs, against William B. Tiffany and others (the parties being the heirs at law of Taylor), and the relief demanded in the complaint was that it should be adjudged that the said Taylor died intestate as to one-half of his estate, and for a partition and division of the premises according to the respective rights of the parties. The action was known in the case as "Rich against Tiffany." William G. Rich represented the plaintiffs, and to some extent other heirs, in the matter; and before the action was commenced entered into negotiations with the defendant, Dorthy, to represent his clients as the New York attorney in the action. At that time Mr. Dorthy was the attorney for the executors of Taylor, who objected to his becoming the plaintiffs' attorney in the action, but Dorthy advised them that the only interest the executors had in the matter was to see that the property was distributed as the law required, and there was no real conflict in interest between the executors and the heirs of the estate. The complaint in the action was signed, however, by another attorney. Several firms of lawyers appeared for different defendants, and Dorthy appeared for the executors; the defendants answering putting at issue the complaint to some extent; Dorthy acting also, in conjunction with Rich, to a considerable extent as the counsel for the parties represented by William G. Rich, having interviews with him, correspondence, and other transactions in the interest of the heirs at law. This action was referred to a referee to hear, try, and determine, and the referee's and stenographer's fees, and other expenses of the trial amounted to about $250; the referee's fees being $100.

After the trial of the case and the decision of the referee, his report was withheld for fees. The defendant drew upon William G. Rich, through a bank in Rochester, for $250, and so notified him by telegraph. The draft was honored, and the defendant received the money, and it was claimed by Rich that that money was sent to Dorthy to pay the fees and other expenses, and not for his personal use; while Dorthy contended that he had the right to and did apply the money upon an indebtedness due him from the clients of Rich for his professional services in the action. This difference presented the two theories upon which the trial for larceny was conducted, and the jury found with the people. Much evidence was given in the case, and the disputed point was litigated at great length as to whether Dorthy received this money as the agent and attorney of Rich for the special purpose named, or whether he received it as a payment upon an indebtedness due him from Rich and his clients. Important rulings at the trial and other facts will appear in the opinion of the court.

Argued before HARDIN, P. J., and ADAMS, GREEN, and WARD, JJ.

John Van Voorhis, for appellant.
George D. Forsyth, Dist. Atty., for the People.

WARD, J. The learned counsel for the appellant presses upon our consideration upon this appeal numerous exceptions taken upon the trial and in the proceedings in the action. We have examined them with the care which the importance of the subject demands, and do not deem it important to direct our attention upon this review to any of the points made by the counsel except the following: First, the admission of the judgment roll in the action of Rich against Tiffany in evidence; second, as to the sufficiency of the second count in the indictment; third, as to the admission of the evidence concerning the defendant's membership of a Baptist church, and the admission of proof of the proceedings in the supreme court to disbar, and the disbarment of, the defendant as an attorney at law; fourth, the denial of the motion for a new trial upon the ground of newly-discovered evidence.

Upon the trial the people offered in evidence the judgment roll in Rich against Tiffany. It was a history of the proceedings of the trial and of the judgment, and it was important to establish a disputed fact as to the date of the referee's report, and to show the relations of the defendant to the case, the people claiming that this record was evidence that the claim of the defendant that he in any manner represented the heirs at law of Taylor in that action was without foundation, and that, as he was acting as attorney for the executors, he could not also represent the other parties to the action, and that, therefore, his claim for compensation as against Rich and his clients could not be maintained. We think this judgment roll was competent for the purposes claimed by the people, and for other purposes, and we find no reversible error in its admission as evidence; nor was there error in the ruling by the trial court as to the sufficiency of the second count in the indictment. This count charged as a fact that in the transaction concerning the $250 received by the defendant from Rich Dorthy was the servant, agent, attorney, and bailee of Rich, and occupied a fiduciary relation to him. It is contended by the learned counsel for the defendant that this was not a sufficient allegation to

establish such an agency or relation, but that the indictment should have set forth the facts showing the agreement which constituted the defendant an agent, bailee, or attorney, and that the allegations in the indictment are mere conclusions of law; but it is usually sufficient, and we hold it in this case to be sufficient, if the indictment avers the offense as the statute defines it to be.　Phelps v. People, 72 N. Y. 349; People v. Weldon, 111 N. Y. 569, 574, 19 N. E. 279; Eckhardt v. People, 83 N. Y. 462; People v. West, 106 N. Y. 293, 12 N. E. 610.　Folger, J., said in Phelps v. People, supra:

"If the indictment avers the offense as the statute defines it, the averment is sufficient; for the rule is that while, in framing an indictment on a statute, all the circumstances which constitute the definition of the offense in the statute itself, so as to bring the accused precisely within it, must be stated, yet no other description of the thing in which the offense was committed is necessary to be stated than that contained in the statute itself."

The terms "servant," "agent," "attorney," and "bailee," used in this indictment in describing the defendant in his relation to this money charged to have been stolen, are terms well understood both at law and in common parlance, and the defendant could not in any manner have been prejudiced or misled by the use of any of these terms, and they are the same terms used in the statute itself.　But more serious questions confront us.　Upon the trial the defendant was sworn as a witness in his own behalf, and, after testifying to matters in issue, he was cross-examined by the district attorney, and we quote from the record:

"Q. You were a member of the Baptist Church once, weren't you? (Mr. Van Voorhis objected to the question as incompetent and immaterial. Received, and exception.) A. I was. Q. Are you a member now? (Same objection by Mr. Van Voorhis. Received, and exception.) A. No, sir. Q. Did you state, in a communication to the Baptist Church authorities of the city of Rochester, or any of them, that, while they had withdrawn from you the hand of Christian fellowship, that you should still continue to work in the cause of Christ? (Mr. Van Voorhis objected as incompetent and immaterial, because that any statement he had made in a letter can only be proved by the letter. Received, and exception.) A. My answer is that all the communications I had with the Second Baptist Church are in writing, and I desire to produce them, if you are going into the subject. I said, in one communication, that, notwithstanding their action, I should still continue to be interested in the cause. I am not here to say whether I am a moral gentleman or not. I so regard myself."

This matter was strictly collateral to the issues being tried, and was not authorized by any portion of the direct examination of the witness.　The effect of the testimony was to prove that the defendant had once been a member of the Baptist Church in good standing, and had been expelled therefrom for some cause which the church deemed sufficient.　The purpose of the people in giving this evidence was to discredit the defendant as a witness.　It was very important testimony, and may have placed a heavy hand upon the defendant upon his trial for crime.　The exact effect upon the jury we cannot predict, as such evidence affects different minds differently, but upon a jury carefully drawn from a law-abiding and religious community the effect must have been disastrous to the defendant.　The question now is whether that evidence was competent.　We will discuss this in connection with a difficulty which we shall presently meet, and in

connection with the authorities to be presented.    Upon the cross-examination of the defendant by the district attorney, that officer, holding in his hand what purported to be charges of the bar association of Rochester against the defendant as an attorney, and for which proceedings for disbarment had occurred, asked a question, and the following proceedings occurred:

"Q. You were suspended from the practice of law by the supreme court of this state? (Objected to by defendant's counsel as incompetent and immaterial. Received, and exception by defendant.) A. Yes, sir; I was. Q. And you were suspended upon the charges which were those which I have already shown you? (Mr. Van Voorhis objected as incompetent and immaterial, and upon the further ground that the charges were not in evidence. Received; exception by defendant.) A. I say I was suspended. I do not answer that either by yes or no, because I was not suspended upon all the charges. Q. Was there one of them that you were not suspended upon? (This was objected to as incompetent and immaterial. Received, and defendant excepted.) A. Yes, sir; there was one. Q. These charges were tried before a referee, Mr. Farnum? A. The testimony was taken before him. They were not tried before him. Q. You were sworn as a witness on those proceedings? A. Yes. sir. Q. And the referee made his report to the appellate court of this state of the facts? ˙ (Same objection by defendant's counsel, ruling, and exception. Not answered.) Q. Did either the referee or the supreme court find you guilty? (Same objection by defendant's counsel. Same ruling and exception.) A. The supreme court did, and the referee reported against me, but the referee did not try me on any of them. * * * Q. Isn't it true that one of the charges upon which you were tried and found guilty and disbarred was that John J. Rudman was appointed executor of the estate of Betsy Benham, and that you acted as attorney for John J. Rudman, and caused said Rudman to invest on a bond and mortgage made by Mary Curran for $313.00 and the sum of $675.00 on a bond and mortgage by Louise Schaad for $1,350.00, and upon a bond and mortgage by William Sanbun, all of whom were clients of yours: and that you thereafter received payments of such mortgages, and did not pay the same over to said Rudman as executor? Wasn't that one of the charges? (Mr. Van Voorhis objected as incompetent and immaterial, and further upon the ground that he cannot prove the contents of. a written paper in that way. Received; exception by defendant.) A. That was one of the charges. Q. And wasn't one of the charges that was made against you by the bar association, upon which you were found guilty and disbarred, that one Margaret McGill, of the city of Rochester, retained you to act as her attorney, and procured a loan upon her property at No. 38 Penn street, in the city of Rochester, of one Murdock, and that you did procure said Margaret McGill to execute a mortgage for $900 on her said property to one Mary S. Chapman, and caused said mortgage to be recorded in Monroe county clerk's office, and did you receive from said Mary S. Chapman an assignment of the mortgage held by you, held by one John Motley, for eight hundred dollars, and her check for $90.00, and that you sold said mortgage to G. Denton Smith for the sum of $760.00 and his check of $50.00, and converted the same to your own use? (Mr. Van Voorhis objected as leading, incompetent, and immaterial, and as putting in evidence the contents of a paper without introducing the paper itself. Received, and exception by ˙ defendant.) A. I think that is the substance of the charge which was found against me by the referee, and affirmed by the appellate court of this department. Q. And wasn't one of the charges which was made against you, and on which you were tried, found guilty, and disbarred, that you falsely represented to one Mary and Charles Williamson, while you were acting for them as attorney, that Charlotte A. Lord then held a mortgage for the sum of $800.00 upon the property of said Williamson, and desired them to make a payment of $200.00 upon the principal sum of said mortgage, and that in consideration of such payment she would reduce the rate of interest upon the balance of said mortgage, being the sum of $600, to five per cent., and, relying upon said representations that Charles and Mary Williamson, or one of them, paid you as attorney the sum of $200.00, to be by

you paid to said Lord upon the mortgage held by her, and that you converted. said $200.00 to your own use, with the intent of converting it to your own use?: (Same objection as before. Same exception by defendant. Same ruling.) A.. That was one of the charges which was reported against me by the referee, and which was affirmed by the appellate court of this department. Q. And upon which you were disbarred? A. Certainly, I was disbarred. Q. Was one of the charges upon which you were found guilty and disbarred that upon the 27th day of May, 1895, when Mary Williamson was subpœnaed by the district attorney of the county of Monroe to appear before the grand jury of the county of Monroe, then in session in the city of Rochester, and to bring with her certain receipts then held by the said Mary Williamson relating to the mortgage referred to in my last question, that you then and there advised said Mary Williamson not to appear before the grand jury pursuant to said subpœna, and advised her that no harm would come to her if she did not come before the grand jury in obedience to said subpœna (Same objection, ruling, and exception by defendant.) A. That was the substance, as I remember, of that charge, which was found against me by Referee Farnum, whose report was affirmed by the supreme court of this department, and I was disbarred. Q. Wasn't one of those charges that was made against you, and upon which you were found guilty, and disbarred, that on the 12th day of August, 1893. Mrs. Munson gave her check for the sum of $1,000.00, and handed the check to her husband, to be delivered to you, and it was so delivered, to be used by you in the purchase of the mortgage known as the 'Baird Mortgage' on the residence of Dr. Riggs upon Rutger street, and that you never applied it to that use, but applied the money to your own use? (Same objection, ruling, and exception by defendant.) A. That was one of the charges that the referee reported against me, and his report was affirmed by the appellate division of the supreme court."

These questions and answers indicate, and the record discloses, that prior to the trial of Dorthy for larceny proceedings had been taken by the Bar Association of Rochester upon the charges indicated by the above questions and others to disbar Dorthy, and upon application to the general term of the Fifth department a referee had been appointed, who took evidence and sustained by his report all but one of the eight charges which had been preferred against the defendant, and that this court had affirmed the report of the referee, and disbarred the defendant. All of the evidence was called out upon this subject by the district attorney over strenuous objections by the defendant's counsel, except such as the defendant gave upon his redirect examination after the foregoing questions had been answered by the defendant. The matter was wholly collateral to the matters in issue upon the trial of the defendant, and was concededly introduced for the purpose of discrediting him as a witness. The effect of these questions and answers was to show that the referee and the appellate division of the supreme court had in this proceeding convicted Dorthy of several larcenies not connected with the one upon which he was on trial, and of one attempt to suppress testimony which should have been submitted to the grand jury. The learned district attorney insists that it was proper to interrogate the defendant, and call out this evidence from him, because it proved facts of misconduct and crime on his part which it was competent to show for the purpose of destroying his credit as a witness. This we deem an extraordinary proposition, in view of the settled law of this state. The proposition is simply this:. that it is competent to ask a witness upon cross-examination, not as to his own acts, but as to the acts, conclusions, and opinions of others, not in a criminal proceeding, not upon a conviction for crime, not.

upon a trial in accordance with rules of criminal law, but in a civil proceeding,—in an investigation to determine whether a man should be turned out of a church, or a society, or of a bar association, or deprived of the privilege of practicing law, or of some other franchise. The court of appeals of this state has directly declared against this proposition in several cases. In Nolan v. Railroad Co., 87 N. Y. 63, 68, an exception was taken to the ruling of the court permitting a witness to be asked on his cross-examination if he had been expelled from a fire department. The court said the question was improper, because the fact sought to be proved was neither pertinent to the issue nor did it relate to any specific fact which tended to discredit the witness, or impeach his moral character. In People v. Brown, 72 N. Y. 571, the rule was laid down that where a defendant in a criminal action takes the stand as a witness in his own behalf, he is subject to the rule as to the examination of other witnesses, and is not thereby deprived of his rights as a party. His counsel may speak for him while he is a witness, and an error committed by the court against him may inure to his benefit as a party, and that it was error to ask such a witness how many times he had been arrested. In People v. Crapo, 76 N. Y. 288, it was also held to be error to ask a defendant in a criminal case if he had been arrested. In Ryan v. People, 79 N. Y. 593, it was held that it could not be shown by a witness upon his cross-examination that he had been indicted for an offense. In Lindsley v. Miller, 3 App. Div. 127, 128, 39 N. Y. Supp. 393, this court held that it was not competent, in order to affect the credibility of a witness, to ask him if "he had never been charged with 'crooked driving,' and if he had not recently been taken out of his sulky at Syracuse for 'crooked driving.' " Follett, J., said:

"The purpose of the question was to affect the defendant's credibility, and that the tendency of it and of the answer was to prejudice him before the jury. It is well settled in this state that it is not competent to ask a witness on his cross-examination for the purpose of affecting his credibility if he had been charged with crimes or misdemeanors, or if he had been turned out of a social organization,"—citing many cases.

At common law, persons convicted of infamous crimes were excluded from being witnesses altogether, but by statutes adopted in most of the United States the disqualification of infamy is removed, and the conviction may be proved to affect credibility (1 Whart. Ev. § 397), and by our Penal Code, § 714, a person convicted of a crime is a competent witness in any cause or proceeding, civil or criminal, but the conviction may be proved for the purpose of affecting the weight of his testimony, either by the record of a conviction or by his cross-examination. The rule goes no further than to permit the witness to be asked as to specific facts or acts in his own career which tend to discredit him, or to impeach his moral character; and that only to a reasonable extent, within the discretion of the court, subject to review, however, if that discretion is abused (Ryan v. People, supra; People v. Irving, 95 N. Y. 544–546, and cases cited; Spiegel v. Hays, 118 N. Y. 660, 22 N. E. 1105); and this was an extension of the rule which did not permit the examination into specific acts of a witness to discredit him (1 Whart. Ev. § 56). Judge Folger said, in

People v. Crapo, 76 N. Y., at page 291, as late as 1879, in quoting from Greenleaf:

"The great question, however, whether a witness may not be bound in some cases to answer an interrogatory to his own moral degradation, when, though it is collateral to the main issue, it is relevant to his character for veracity, has not been brought into direct and solemn judgment, and must, therefore, be regarded as an open question."

This statement indicates the extreme caution with which the courts have at last reached the conclusion that a witness may testify as to collateral acts of his own tending to prove his moral degradation, but it has never been the law that a witness may be compelled to testify to the conclusions of others to prove such moral degradation, or to impeach him as a witness, except it be the conviction of a crime, or such confinement in prisons or jails as would indicate a conviction. The reason of this distinction is plain. Where a person is interrogated as to his own acts, he is supposed to be familiar with what he himself has done, and can give any explanation that may exist consistent with his innocence; and, as the question is collateral to the issues on trial, his answer concludes the other side, and he cannot be contradicted. But, if he is interrogated concerning the acts and decisions of others which tend to disgrace him, the case is different. He may not be able to protect himself by explanation. He may be ignorant of the facts upon which the acts or conclusions of others are based. The court will not stop to try the merits of such collateral accusations, and the witness may thus be injured and disgraced by results for which he is not responsible.

Section 714 of the Penal Code, which we have cited, has no application to this case. A person under our system of jurisprudence can only be convicted of a crime after a fair trial in the appointed way, where he can be fully heard in his defense, and where he can be protected by all the presumptions with which the law surrounds a defendant upon his trial for crime. A conviction upon such a trial may be properly shown to impair the credit of a witness, though it is the act of others. It is the deliberate act of the law upon a trial duly had before the court and a jury. But the proceeding to disbar an attorney under sections 67–69 of the Code of Civil Procedure is a summary one. It is not a trial. It is simply an investigation. A copy of the charges must be delivered to the attorney, and he may be heard in an informal way in his defense. The result of the proceeding can only be a suspension or removal from the courts of the state. Section 69. If the attorney has been convicted of a felony, he may be disbarred for that reason alone.

As we have seen, a witness cannot be compelled to state whether he has been indicted. An indictment is an accusation from a body charged and sworn to investigate crime upon the oath of witnesses, and it acts judicially. If its conclusions cannot be shown to discredit a witness, upon what principle should charges made by a bar or any other association be given in evidence? The court of appeals has said in the proceedings to disbar the defendant (152 N. Y. 601, 46 N. E. 837) that "the effect of the proceeding to disbar is not criminal, and is not intended for punishment, but to protect the court from the

official ministration of persons unfit to practice as attorneys therein." The charges of the bar association and the report of the referee were simply charges, not facts, and did not prove facts; but in the estimation of the jury the disbarment of the defendant upon these serious charges by this court may have had all the effect of convictions for crime upon a trial duly had. The learned trial court charged the jury upon this subject as follows, after speaking of this court having disbarred the defendant:

"You have a right, therefore, to assume that they investigated these charges carefully; that they would not have disbarred the defendant, who was charged with so many serious offenses, without having fully and carefully investigated the charges. So far as these charges are concerned, we must take the decision of the appellate division as binding upon this court. But, gentlemen, while I lay down that as a rule of law it is wholly immaterial as to what the appellate division may have held unless it tends to impair the character or credibility of Dorthy's testimony in this case. Upon that point, and that point alone, it is material."

The evidence was, therefore, permitted to have its full force and effect as establishing the charges of criminality on the part of the defendant for the purpose of impeaching him. In admitting this evidence the learned trial court was doubtless influenced by the case of People v. Reavey, 38 Hun, 418, where the defendant was convicted of larceny in the second degree, and while upon the stand as a witness he was asked upon cross-examination if he had been suspended by the action of the supreme court from his office as attorney and counselor. Judge Daniels held that this was competent as affecting his credibility, upon the authority of People v. Irving, supra. With all due respect to the learned judge, we do not see that People v. Irving sustains this ruling. The distinction between showing the witness' own acts and the acts of others to impeach him, which we have pointed out, does not seem to have occurred to the learned judge. Judge Finch, in People v. Irving, at page 544, in commenting upon Nolan v. Railroad Co., supra, clearly pointed out the distinction in this pithy statement: "There the witness was asked, not what he had done, but what the fire department had done,—whether it had expelled him." But People v. Reavey is no authority for proving, under the guise of a proceeding to suspend an attorney, the charges made against him upon which that suspension was obtained. The mere fact, only, of the suspension was shown. That is very different from the case at bar, where the prosecution sought to prove the charges upon which the disbarment was founded, and to establish that several distinct felonies had been committed by the defendant. These different offenses the prosecution would not have been permitted to show upon any criminal trial for another crime unless it was proper to establish the intent by which the defendant committed the crime for which he was being tried. That the evidence of the charges against the defendant and of his disbarment was most prejudicial to him cannot be denied.

Upon the trial there was a closely-contested question of fact as to whether the defendant received the $250 as the agent, and in a fiduciary capacity, or whether he received it upon a claim which he made in good faith for services rendered in the action of Rich against Tiffany. Several witnesses testified in behalf of the defendant, sus-

taining his side of this issue. Witnesses testified to sustain the side of the people, and circumstances and facts were adduced by the people to the same end. The defendant was the most important witness in his own behalf, and, if he were disgraced and discredited, his conviction was quite certain to follow. We should not permit his conviction to stand if it has been or might have been secured by incompetent or illegal evidence. That much of this evidence was incompetent, especially that portion most dangerous to the defendant, seems to us entirely clear. The evidence before the jury that the defendant had been expelled from the church, that he had been expelled from the bar on charges of numerous crimes and for gross misconduct in the discharge of his professional duties, we may safely assume substantially destroyed all credit as a witness which the jury might otherwise have given him. These conclusions lead to a reversal of the judgment appealed from.

The remaining point—the denial of the motion for a new trial upon the ground of newly-discovered evidence—it is hardly necessary to consider, in view of the conclusions thus reached, but we will dispose of that motion also. Late in the history of this case, and after the appeal had been taken to this court, the defendant claimed that he had just discovered a letter from William G. Rich, dated July 20, 1895, which was not admitted in evidence upon the trial, but was exceedingly material and important to him upon such trial. An examination of that letter fails to disclose the importance attached to it by the defendant. At most, it was but cumulative evidence, and under the circumstances under which it came to light it should not constitute a ground for a new trial. At least such was the opinion of the learned trial judge, who wrote a careful and well-considered opinion upon the subject, in which we concur.

The judgment and the order denying the motion for a new trial, made upon the minutes, should be reversed, and a new trial granted. All concur, except ADAMS, J., dissenting.

HARDIN, P. J. (concurring). The statute gave to the defendant the opportunity of being a witness in his own behalf, and he availed himself of the provisions of the statute.

In People v. Tice, 131 N. Y. 656, 30 N. E. 494, Andrews, J., said:

"The accused is not compelled to become a witness. When he avails himself of the privilege conferred by the statute, he subjects himself voluntarily to the situation of any other witness; and if he is compelled to answer disparaging questions, or to give evidence relevant to the issue, which is injurious, it is the consequence of an election which he makes to become a witness, which involves a waiver on his part at that time of the constitutional exemption. If he accepts the privilege given by the statute, he takes it with its attendant dangers. 'His own act is the primary cause, and, if that is voluntary, he has no reason to complain.' Church, C. J., in Connors v. People, 50 N. Y. 240. The principle that an accused person who becomes a witness in his own behalf thereby places himself in the attitude of any other witness in respect to the right of cross-examination, has been announced in many cases in this court. Brandon v. People, 42 N. Y. 265; Connors v. People, supra; Stover v. People, 56 N. Y. 315; People v. Casey, 72 N. Y. 394. * * * This being the construction put by our courts upon the statute, there is no constitutional right infringed if the accused, having elected to take the stand as a witness, is subjected to the ordinary rules of examination. The range and extent of the

·cross-examination is within the discretion of the trial judge, provided only ·that it relates to relevant matters, or to matters affecting credibility."

The same principle was referred to and stated in Nolan v. Railroad ·Co., 87 N. Y. 68, and in disposing of the ruling compelling a witness to state that he had been expelled from the fire department the opinion ·states:

"The question was improper, because the fact sought to be proved was ·neither pertinent to the issue, nor did it relate to any specific fact which tended ιto discredit the witness, or impeach his moral character."

That case was referred to with approval in People v. Irving, 95 N. Y. 544, and the same judge who prepared the opinion in the former case stated in the latter case:

"There the witness was asked, not what he had done, but what the fire department had done,—whether it had expelled him. * * * An expulsion from the fire department might be summary or arbitrary, and with little or no chance of a fair trial, or for causes involving no crime, and not affecting the ιmoral character."

In People v. Court of Oyer and Terminer, 83 N. Y. 438, it was held ιthat:

"The range and extent of a cross-examination is, as a general rule, within ιthe discretion of the court, subject to the limitation that it must relate to matters pertinent to the issue, or which tend to discredit the witness or impeach his ιmoral character."

It is difficult, upon an inspection of the record (page 396), to discover ʾhow the fact that the defendant was once a member of the Baptist ·Church was relevant to the issue, or tended to affect his credibility. Nor do we see how the fact that he was not, at the time he was cross- ·examined, a member of the church, was pertinent to the issue, or tended to impair his credibility. He may have resigned, or voluntarily ɜsevered his connection with the church. The prosecution propounded ɜto the witness a question which assumed that the church "had with- ·drawn from you [him] the hand of Christian fellowship," and required the witness to answer what communication he had made bearing ʾupon the subject of his intention to "still continue to work in the ·cause of Christ." That question was objected to as incompetent and ʾimmaterial, and upon the further ground that "any statement that he ʾmade in a letter can only be proved by the letter." Notwithstanding those objections, the court allowed the evidence, against the defend- ·ant's exception. The question propounded in behalf of the people, ·and the answers which the witness was compelled to deliver, brought out the fact that the Baptist Church "had withdrawn" from the de- fendant "the hand of Christian fellowship." The defendant, there- ʾfore, in cross-examination, was compelled to prove the action of an- ·other body, adverse, apparently, to his standing in the church; and, as is said in respect to evidence compelling a witness to state that he had been expelled from the fire department, it was the act of an- other body, and not the act of the defendant or the witness, and under well-settled rules that charges or accusations, or even indictments or arrests, may not be inquired into, "since they are consistent with in- nocence, and may exist without moral delinquency," it seems the ex- ɞceptions taken by the defendant present error. ˙ Greaton v. Smith, 1

Daly, 380; Van Bokkelen v. Berdell, 130 N. Y. 141, 29 N. E. 254;. Lindsley v. Miller, 3 App. Div. 128, 39 N. Y. Supp. 393. And it is·. pertinently suggested in the opinion of WARD, J., that such error·· worked harm to the defendant. And, notwithstanding the rule of section 542 of the Code of Criminal Procedure, to the effect that "exceptions which do not affect the substantial rights of the parties" shall not affect the judgment to be given by an appellate court, the conviction, which may have been seriously influenced by such improper evidence, should not be allowed to stand. People v. Doyle, 11 App. Div.. 448, 42 N. Y. Supp. 319; People v. Chacon, 102 N. Y. 669, 6 N. E. 303;· People v. Dimick, 107 N. Y. 13, 14 N. E. 178.

The foregoing views lead to the same result stated in the elaborate· opinion of WARD, J., in which I concur.