THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* OWEN SULLIVAN, Appellant, Impleaded with JOHN SPAULDING.

*Evidence — a determination of police commissioners is not a " conviction " under section 832 of the Code of Civil Procedure, and section 714 of the Penal Code.*

The determination of police commissioners, in proceedings before them, imposing a fine or other punishment for dereliction of duty on the part of a member of the police force, is not a " conviction " within the meaning of section 832 of the Code of Civil Procedure, and section 714 of the Penal Code, which may, on his trial in a criminal action in which he is convicted of an assault in the third degree, be proved on his cross-examination in order to affect his credibility.

The conviction referred to in these sections is the same as that which would formerly have disqualified a person from testifying, and such as is reached after an orderly trial in a court of law, before a judge or petit jury.

APPEAL by the defendant, Owen Sullivan, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of

the clerk of the county of New York on the 17th day of December, 1897, upon the verdict of a jury convicting him of the crime of assault in the third degree, and also from an order denying the said defendant's motion for a new trial.

The appellant, Owen Sullivan, a police officer of New York city, and John Spaulding, a station house doorman, were indicted for felonious and willful assault with a club upon a prisoner, John Dalton, whose real name is William Rooney. Sullivan had arrested Dalton for highway robbery, and the alleged assault took place in the station house after Sullivan and Spaulding had been ordered to conduct the prisoner to a cell. Dalton was subsequently convicted of the crime for which he was arrested, and is now serving a sixteen-year sentence in State's prison, from which he was brought to testify on this trial. The jury acquitted Spaulding, but found Sullivan guilty of assault in the third degree.

It appears that Dalton and a confederate assaulted one Hilderbrand, a clerk employed by the George Ringler Brewing Company, and took from him money and checks belonging to his employers; that the confederate escaped with the money and checks, but that Dalton was captured by Policeman Sullivan, taken by him to the station house and arraigned before the sergeant on the charge of highway robbery; that the sergeant ordered Sullivan to assist the doorman, Spaulding, in conducting the prisoner to a cell; that Sullivan, Spaulding and Dalton left the sergeant's desk for the prison, and that shortly afterwards Sullivan struck Dalton a blow with his billy. The versions given by Dalton and by Sullivan as to when the blow was struck are directly contradictory. Dalton's story is that after leaving the sergeant's desk, he was conducted by Sullivan and Spaulding to a cell, and that the door was shut; that thereafter Sullivan demanded, in a threatening way, the name of the confederate who escaped; that when the request was not complied with, Sullivan told Spaulding to open the cell door; that Spaulding did so, and that Sullivan entered the cell, again demanded the information, and then struck him several times over the head with his billy before he grasped and held it; that then the captain of the precinct appeared, told him to release the billy, and ordered Sullivan from the cell. Sullivan's testimony is that when Dalton was being con-

ducted to the cell, and before the cell was reached, he advised his prisoner to give information regarding the confederate; that Dalton thereupon struck him in the face; that this happened on the way to the cell, just after a bridge over an open court had been passed; that in self-defense and to prevent his prisoner from escaping, he struck Dalton once with his billy; that he was pushing Dalton, who was holding the billy, into the cell when the captain came up, ordered Dalton to release the billy and directed him to leave the prisoner.

*Frederick B. House,* for the appellant.

*Charles E. Le Barbier,* for the respondent.

O'Brien, J.:

The principal questions presented on this appeal are, whether the verdict is warranted by the evidence, and whether the court erred in admitting evidence of the appellant's record as a police officer.

A review of the testimony discloses that the questions upon the merits as to the defendant's guilt were disposed of by the jury upon close and conflicting evidence, and in view of the contradictory versions of the alleged assault, it is apparent that a slight variance in favor of the defendant would have turned the judgment the other way. The character and credibility of the witnesses were, therefore, important factors, and the admission of incompetent evidence relating thereto would have an especial bearing upon the conclusions to be reached. As affecting the defendant's testimony, his record as a police officer was introduced in evidence, and the substance of such evidence, and the grounds upon which it was admitted, may be seen from the following questions and answers, with the objections interposed by counsel and the rulings thereon by the the learned judge presiding at the trial: " Q. You have been disciplined for clubbing have you not, before? [Objection.] By the Court: If he was convicted before of clubbing anybody or assaulting anybody, you may show it. [Exception.] Q. Haven't you been convicted of clubbing before? A. I was fined ten days' pay; yes. Q. When was that? A. 1892; I ain't sure. Q. See if this is right. On November 27th, 1891, you assaulted a citizen with a club and called him vile names, and were convicted of it and fined ten days? [Objection. Exception.] A. That is right; I was convicted of it. Q. Weren't you, on April 27th, 1894, convicted as follows: You

assaulted and arrested and failed to convey a prisoner to the station house ; fined five days? [Objection.] By the Court : That is a conviction. * * * A. The assault part was dismissed. Q. Weren't you convicted of that, no matter what you did? A. I was fined five days for allowing a prisoner to escape. By the Court : Q. What were you fined five days for? A. For allowing a prisoner to escape. Q. Then you were convicted for allowing a prisoner to escape and you were fined five days' pay; isn't that right? [Objection.] A. Yes, sir. By Mr. Carpenter : Q. Isn't this the charge that was made against you : 'Assaulted and arrested and failed to convey a prisoner to station house?' A. Yes, sir. Q. And on that you were convicted? [Objection. Exception.] A. Yes, sir. * * * Q. On June 25th were you convicted and fined three days on this charge : Absent from post and in liquor store? [Objection. Exception.] A. Yes, sir. Q. And on March 3rd, 1892, convicted and fined one day on this charge : 'Did not properly patrol?' [Objection. Exception.] A. Yes, sir. Q. And on March 26th, 1895, convicted and fined one day for being absent from post? A. What is that? Q. March 26th, 1895, absent from post one day? A. Yes, sir ; one day. Q. November 26th, 1895, loitering, fined one day? A. Yes, sir. * * * Q. Failed to return memoranda book at desk at expiration of duty, and fined one-half day for that? [Objection. Exception.] A. Yes, sir." After the judge had charged the jury, the request was made that, in considering Sullivan's evidence, the jury was entitled to take into consideration his record. To which request the court replied : " That, gentlemen, you are entitled to take into account on the question of his credibility — Sullivan's record which was read to you yesterday, or proved."

It will be noticed that the ground upon which the rulings were based was that the proceedings before the police commissioners, which resulted in fines or other punishment for dereliction of duty or infractions of police rules, were *convictions*, and, therefore, proof thereof on the defendant's cross-examination was proper, as affecting his credibility, under section 832 of the Code of Civil Procedure and section 714 of the Penal Code. The Codes provide in these sections that a person who has been convicted of a crime or misdemeanor is, notwithstanding, a competent witness, but that

the conviction may be proved for the ·purpose of ·affecting the weight of his testimony by his cross-examination, upon which he must answer any question relevant to that inquiry. It appears to us that the learned judge quite misapprehended the purpose and meaning of these provisions, and applied them to determinations which in no legal sense could be regarded as convictions. The reason for the enactment of the sections referred to is that, prior to the adoption of the Codes, a person convicted of a crime was entirely disqualified from testifying ; and it was with the view to remove such disqualification and to make the person convicted of a crime competent to testify that they were passed, with the limitation, however, that " the conviction may be proved for the purpose of affecting the weight of his testimony."

The conviction mentioned in the Code provisions is the same as would formerly have disqualified a person from testifying. But, as held in many cases, it is only such conviction as is reached after an orderly trial in a court of law, before a judge or petit jury. The cases have further held that an actual judgment of the court is necessary to constitute a conviction. Thus, in *Blaufus* v. *People* (69 N. Y. 107), tried before the Code was enacted, in commenting upon the use of the word " conviction " in a statute against the subornation of perjury, it was said : " In ordinary phrase, the meaning of the word *conviction* is, the finding by the jury of a verdict that the accused is guilty. But in legal parlance it often denotes the the final judgment of the court ;   *   *   *   to shut a person from the witness box   *   *   *   guilt must be shown by a judgment ;   *   *   *   until a person found guilty of perjury by the verdict of a jury has received judgment and sentence from the court, he is not incompetent to speak as a witness." As stated, also, in *Schiffer* v. *Pruden* (64 N. Y. 52), " doubtless the word *conviction* ordinarily signifies the finding of the jury by a verdict that the accused is guilty, yet the word sometimes denotes the final judgment of the court.   *   *   *   Thus the case of a witness rendered incompetent to testify by conviction for an infamous crime, has an analogy. The language of the law is that he is rendered incompetent by his conviction of treason, felony or *crimen falsi,* but to shut him from the witness box his conviction must be shown by a judgment."

Since the provisions of the Codes came into effect, making per-

sons competent witnesses, notwithstanding their conviction for crimes or misdemeanors, a similar construction has been given the word conviction, and, as defined in the case of *Sacia* v. *Decker* (1 Civ. Proc. Rep. 56), " In legal parlance conviction denotes the final judgment of the court in passing sentence."

That the proceedings before the police commissioners are not of that nature, and that their conclusions can in no sense be properly regarded as legal convictions is evident, and thus the foundation upon which the rulings admitting such evidence were based was wanting.

Notwithstanding the fact that a wrong ground was assigned for admitting such evidence, we should not reverse the rulings made if, for any other good reason, the testimony was competent or it was made clearly to appear that the defendant was not prejudiced thereby. Bearing in mind, however, as we must, the great liberality, within the discretion of the trial judge, allowed upon cross-examination, we think the ruling cannot be sustained. It cannot be doubted that the evidence admitted was harmful to the defendant, and, therefore, the present case is distinguished from that of *Nolan* v. *Brooklyn City & Newtown Railroad Company* (87 N. Y. 68) where an exception was taken to the ruling of the court permitting a witness to be asked on his cross-examination if he had been expelled from the fire department, and it was held that the question was improper because the fact sought to be proved was neither pertinent to the issue nor did it relate to any specific fact which tended to discredit the witness or to impeach his moral character ; but the ruling was allowed to stand as the error was not harmful, for the reason that the reply of the witness was so worded that no unfavorable inference could be drawn.

It is unnecessary to extend the argument to show the error, for the matter has been pointed out and fully discussed in the recent case of *People* v. *Dorthy* (20 App. Div. 308 ; affd., 156 N. Y. 237). This was a case where the defendant, who was an attorney and counselor at law, was indicted for grand larceny, and at the trial, on his cross-examination, it was attempted by the prosecution to discredit his testimony by proving by him that he had been expelled from the Baptist church, and that in proceedings to disbar him from practicing as an attorney and counselor at law a referee and an

Appellate Division of the Supreme Court had found him guilty of several specific acts of larceny not connected with the one on trial, and also of suppressing evidence which should have been presented to a grand jury. In the opinion by the learned judge of the Appellate Division it was said : " It has never been the law that a witness may be compelled to testify to the conclusions of others to prove such moral degradation or to impeach him as a witness, except it be the conviction for a crime or such confinement in prisons or jails as would indicate a conviction. * * * The reason of this distinction is plain * * * he may be ignorant of the facts upon which the acts or conclusions of others are based * * * and the witness may thus be injured and disgraced by results for which he is not responsible. * *. * A person under our system of jurisprudence can only be convicted of a crime after a fair trial, in the appointed way, where he can be fully heard in his defense, and where he can be protected by all the presumptions with which the law surrounds a defendant upon his trial for crime. A conviction upon such a trial may be properly shown to impair the credit of a witness ; though it is the act of others, it is the deliberate act of the law upon a trial duly had before the court and a jury." In affirming the judgment the Court of Appeals held that, assuming that the prosecution has the right for the purpose of attacking the credibility of the witness in his own behalf to ask him whether or not he has been disbarred as an attorney of the court, it is not entitled, on his admitting the fact, to go further and require him to answer or explain all charges that had been made against him in the proceedings for his removal, and the fact that the witness has been expelled from a church does not impeach his credibility ; and when testimony to that fact has no bearing on the main issue in the case, it is error to permit the prosecution to elicit it even indirectly from the defendant, in a criminal trial, upon his cross-examination.

The admission, upon Sullivan's cross-examination, of the decisions of the police commissioners as convictions being, therefore, erroneous and undoubtedly prejudicial, it follows that the judgment must be reversed and a new trial ordered.

BARRETT, RUMSEY and PATTERSON, JJ., concurred.

Judgment reversed and new trial ordered.