THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HARRY BLOODGOOD and Others, Defendants, Impleaded with HARRY HECKHEIMER, Appellant.

Third Department, July 2, 1937.

*George Gordon Battle* [*Edgar Allyn Buttle* of counsel], for the appellant, Harry Heckheimer.

*Thomas W. McDonald, District Attorney,* for the respondent.

RHODES, J.   The body of the indictment under which appellant was convicted is as follows: " The Grand Jury of the County of Essex, by this indictment, accuse Harry Bloodgood, Eddie Powell, Harry Heckheimer and Joseph Shea of the crime of Arson in the Second Degree, in violation of Section 222 of the Penal Law of the State of New York, committed at the Town of North Elba, County of Essex and State of New York, on or about the 12th day of February, in the year of our Lord, one thousand nine hundred and thirty-three."

A bill of particulars as to the indictment was furnished, the body of which is as follows:

" That Harry Bloodgood, Eddie Powell, Harry Heckheimer and Joseph Shea, on or about the 12th day of February, 1933, in the night time, at the Town of North Elba, Essex County, New York, acting in consort and through a conspiracy, did set on fire and burn a certain dwelling house, then unoccupied, the property of Harry Heckheimer or Guyson, Inc.   And further

" That the said Harry Bloodgood, Eddie Powell, Harry Heckheimer and Joseph Shea, on or about the 12th day of February, 1933, in the night time, at the Town of North Elba, Essex County, New York, acting in consort and through a conspiracy, did set on fire and burn a certain dwelling house or building, the property of Harry Heckheimer or Guyson, Inc., to and with the intent to prejudice or defraud the insurer or insurers thereof."

The appellant attacks the sufficiency of the indictment supplemented by the bill of particulars, and this question may properly be disposed of before considering other objections raised.

He complains that the bill of particulars, rather than giving any particulars relative to the crime charged in the indictment, is in effect an effort to charge the crime in two counts, and that it charges two crimes instead of one; the first, the burning of the unoccupied dwelling in the night time; the second, the burning of such dwelling in the night time with intent to prejudice or defraud the insurer thereof; further, that the allegations of the bill of particulars and indictment do not contain all of the elements of the crime attempted to be charged.

Only one crime is charged.  (*People* v. *Fanshawe*, 65 Hun, 77; affd., 137 N. Y. 68; Code Crim. Proc. §§ 278, 279, 295-f.)  It was not necessary to set forth all of the elements of the crime.  (Code Crim. Proc. §§ 295-b, 295-c, 295-h.)

The defendants Bloodgood, Shea and Powell, having entered pleas of guilty, testified for the People.  All of the defendants then resided in New York city.

Proof of the alleged conspiracy rests upon the testimony of said three defendants.  Their story is that appellant, an attorney, with offices in New York city, was the owner of the dwelling house in question, which was formerly owned by the wife of the defendant Shea; that in the latter part of January, 1933, Bloodgood inquired of Shea about renting the said dwelling for a month or two, as he wanted to go up there and gamble at and around Lake Placid; that Shea interviewed the appellant concerning the rental and that appellant stated that he would like to get rid of the place as it was expensive to go there, being so far from New York; that he had put a lot of money in there, and that appellant then said, referring to Bloodgood: " Do you suppose he or one of his friends could burn it down?   Will you ask him?"

Pursuant to this request, it was agreed that Bloodgood should burn the dwelling, appellant to pay his expenses and $200 within a few days after the premises should be burned; that appellant should pay for setting the fire twenty or twenty-one per cent of

the amount of insurance to be collected, there being thereon a policy issued to appellant as owner, insuring the dwelling for about $7,000; that the amount to be paid by appellant over and above expenses was to be " split three ways " among Bloodgood, Shea and Powell, Shea furnishing his automobile and Powell being the driver; that in furtherance of the conspiracy Bloodgood and Powell made two trips to the premises; on the first trip they stayed overnight at the Riverside Inn at Saranac Lake, and Bloodgood was identified on the trial by the night clerk of the Riverside Inn; on the trip made at the time the premises were burned Bloodgood and Powell stayed at the Capitol Hotel in Albany; Powell registered under the name of Fred Waters, and the clerk from that hotel produced the register showing such signature on the date when Powell and Bloodgood testified they were there. Powell and Bloodgood went to the dwelling, arriving at the premises about two o'clock in the morning of February 12, 1933, at which time Bloodgood set fire to the house by saturating with kerosene a pile of wood in the cellar of the building and touching a match thereto, resulting in the destruction of the house; that immediately after setting the fire Bloodgood and Powell returned to New York.

Following this the insurance company resisted payment of the claim made by appellant for his fire loss; Bloodgood became impatient for his money and threatened to inform the insurance company unless appellant made good his alleged promise to pay for setting the fire. Appellant refused to pay; Bloodgood and Shea did make disclosures, as a result of which the indictment was found.

It is the claim of appellant that he was not a party to the crime; that the fire occurred innocently as to him; that the other defendants knew that he had a claim pending against the insurance company under the policy in question, and that they conspired together to extort from him moneys under threats that if he did not pay they would inform the insurance company that the property was destroyed through the alleged conspiracy and fraud above set forth.

The facts are sufficient to warrant the jury in finding that the crime charged was committed. One of the objections raised, however, is that there is not sufficient corroboration to warrant the conviction of the appellant.

As to this question it appears that there were two keys to the premises, one of which had been delivered by appellant to one Albert Savage previous to the fire. Savage conducted a gas station adjoining appellant's premises and he and one William Martin had looked after the property at times in the absence of appellant. The key delivered to Savage remained in his possession after the

fire.   It was appellant's custom to leave a key in a hole at the bottom of a post on the porch.   Savage thus corroborated Shea, who testified that appellant had previously said he would arrange to leave the key under the post when he and his mother and Shea went up there, which was to be before the fire, and that when said journey was made Shea saw appellant get the key at the place mentioned; that Bloodgood was told where to find the key, and that he found it at the time he fired the building.

It is undisputed that after the date of the alleged conspiracy the appellant with his mother and Shea visited the premises, leaving New York Saturday, January twenty-eighth, about four P. M., arriving at the premises about two in the morning, Sunday, January twenty-ninth, leaving the premises at about four o'clock in the afternoon, arriving back in New York after midnight the following morning.

The codefendants say that appellant told them, in substance, that before the house could be burned he would have to go to the premises and get some valuable papers and other things.

The appellant admits that the trip was made and Savage corroborates the codefendants as to the presence of appellant with his mother and Shea on the occasion in question.   Shea says that appellant stated before the trip that he would take his mother along " so that it will sort of cover us in case anything happens." They were careful not to arouse her suspicions.

The mother was of slight build, eighty-two years of age.   Shea claims that when they left the premises at the end of the visit they brought away suitcases and other effects which were piled in, leaving only space for the mother to sit in the rear seat; that while they were at the premises, while the mother was not looking, appellant carried a gallon can of kerosene down cellar.   Appellant denies any preparation for the fire and says that he was accustomed to visit the premises once or twice a month, and that he with his mother had been there for three or four days the previous Christmas; that on the occasion described by Shea he went up to look the premises over.

Bloodgood claims that he never had been to the place before; he described the layout of the house and the cellar, the fuel, wood and kindling in the cellar and its location.   The witness Savage corroborates this description.

Appellant's codefendants say that two trips were made by Bloodgood and Powell in furtherance of the plans to burn the building. Shea says that immediately before the first trip the appellant delivered to him a check for about $46 to be cashed; such check being payable to Shea; that he cashed it at a bank, took the money

to appellant, out of which appellant gave him $40, which was handed by Shea to Bloodgood for expenses; that other money for expenses was delivered by appellant to Shea and by Shea to Bloodgood for expenses, and that after the fire Bloodgood was insistent that the $200 be paid to him; that appellant was short of funds, but finally gave Shea a check for $175, the proceeds of which were used by Shea to pay Bloodgood. Photostatic reproductions of checks for these amounts corresponding with the dates fixed by Shea were obtained from the bank upon which they were drawn.

Appellant claims and Shea agrees with him that appellant frequently gave checks to Shea, payable either to Shea or to cash, either for business deals or for loans to Shea, or for the convenience of appellant in having Shea get the checks cashed. Many such checks were produced covering a period from February, 1933, to the end of that year, and both Shea and appellant say that at least one thousand such checks were given.

As to the title to the property, incumbrances and insurance thereon, it appears that the appellant had been the owner, had later conveyed the property to Guyson, Inc., the corporation in which he owned all the stock; that later the property had been reconveyed to him by an unrecorded deed.

The house was worth from $4,000 to $6,000, according to witnesses called by the People. A policy of fire insurance had been issued to the appellant by the Home Insurance Company, $7,500 on the house and $2,500 on the contents. The appellant claims there was a mortgage upon the premises given by him to his mother January 27, 1933, for the sum of $8,000 to secure a loan made by her to him, and a policy of insurance was issued by the Star Insurance Company for the sum of $7,000. This policy was issued February 6, 1933, after the date of the alleged conspiracy, but by its terms the coverage was from January 31, 1933. Appellant testified that it was procured in behalf of his mother to cover her interest as mortgagee.

It is universally recognized that no occurrence or transaction can be properly understood or interpreted without the enlightenment afforded by surrounding facts and circumstances relative thereto; hence these are always material and proper as evidence. Aided by such surrounding facts and circumstances the inferences to be drawn from the acts and conduct of the appellant were questions of fact for the jury; whether he acted innocently or in furtherance of the criminal conspiracy was for the jury to determine. If his acts were done with a felonious intent then the corroborative evidence tended to connect him with the crime.

The corroborative evidence need not be inconsistent with the innocence of the accused. (*People* v. *Elliott*, 106 N. Y. 288.)

Section 399 of the Code of Criminal Procedure requires that the testimony of an accomplice be corroborated by such other evidence " as *tends* to connect the defendant with the commission of the crime."

If the evidence be of that character the jury and not the court is to judge the weight to be given to it. (*People* v. *Everhardt*, 104 N. Y. 591; *People* v. *O'Farrell*, 175 id. 323; *People* v. *Crum*, 272 id. 348; *People* v. *Hooghkerk*, 96 id. 149.)

The meaning of said section of the Code becomes clearer if it be kept in mind that at common law a jury might convict on the uncorroborated testimony of an accomplice. (*People* v. *Mayhew*, 150 N. Y. 346; *People* v. *Everhardt, supra.*) But because of the dubious character of such testimony, " It became the general practice of judges to advise juries not to convict of felony unless such evidence was corroborated by other evidence." (*People* v. *Dixon*, 231 N. Y. 111.)

" It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth." (*People* v. *Dixon, supra.*)

The corroborated facts establish that defendant was at the premises after the formation of the conspiracy, and that he gave two checks to Shea, allegedly to aid in carrying out the crime. The jury were warranted in placing this interpretation upon said acts. There was, therefore, sufficient corroboration tending to connect the appellant with the crime.

The appellant says that the verdict is against the weight of evidence. The accomplices, Bloodgood and Powell, had numerous convictions and there were some inconsistencies in their stories, but as to the main contention relative to the formation and carrying out of the criminal conspiracy, they agree.

Appellant had known Bloodgood and Shea for a period of twenty years; he maintained intimate social relations with them. Appellant, as attorney, had represented Bloodgood, and with appellant, Shea had been engaged in various enterprises during these years, Shea for many years occupying a room in the suite in which appellant had his office. The codefendants voluntarily rendered themselves subject to conviction for the crime in question. The evidence is ample to support the finding of the jury.

For the appellant it is asserted that prejudicial errors occurred during the trial requiring a reversal. It is claimed that the court improperly permitted the reception of declarations of the co-conspirators made after the fire and thus after the conspiracy had come to an end. The proof shows that the building was burned

for the purpose of defrauding the insurance company; this purpose had not yet been effectuated as the insurance company had refused to pay, but efforts were in progress on the part of the appellant to enforce payment under the policy, as he had brought an action therefor, which was then pending. (*People* v. *Peckens*, 153 N. Y. 576; *People* v. *Storrs*, 207 id. 147; *People* v. *Strewl*, 246 App. Div. 400; appeal dismissed, 271 N. Y. 607.)

The appellant complains of a ruling made on his cross-examination, where he was asked if any charges ever were filed against him with the grievance committee of the bar of New York city, and over objection was compelled to answer. This was error. (*People* v. *Dorthy*, 20 App. Div. 308; aff'd., 156 N. Y. 237; *Nolan* v. *Brooklyn City & Newton R. R. Co.*, 87 id. 63; *People* v. *Sullivan*, 34 App. Div. 544; *People* v. *Malkin*, 250 N. Y. 185.)

Another ground of assigned error is that the district attorney proved on the trial that each of appellant's codefendants had pleaded guilty to the charge. This has been held to be prejudicial. (*People* v. *Louise*, 242 App. Div. 471; *People* v. *O'Regan*, 221 id. 331.)

In the case at bar, however, the codefendants by their testimony, admitted that they were parties to the conspiracy. It could make no substantial difference whether the jury were told that these defendants had entered pleas of guilty. Their testimony necessarily revealed their admission of their guilt.

One other error of which the appellant complains was committed during the examination of Shea. Referring to the two checks which Shea claims were cashed to pay Bloodgood, the district attorney before the jury, called upon appellant's counsel to produce the original checks. While appellant's counsel made no reply and interposed no objection, the demand for the production of the checks was prejudicial, as it called upon the appellant in the presence of the jury to produce evidence against himself. (*People* v. *Gibson*, 218 N. Y. 70.)

Other instances of alleged erroneous rulings are not of sufficient weight to require enumeration or detailed discussion. While complaint is made as to alleged errors in the charge, nothing of the sort requires discussion.

It is claimed the district attorney went too far in his cross-examination of the appellant as to matters which placed the appellant in an unfavorable light before the jury and in his summation. In such summation the district attorney elaborated upon the fact that charges had been filed against appellant by the bar association, and at another point quoted the adage, " Tell me what your company is and I will tell you what you are," and then said, " and

I think, gentlemen, that that old adage applies in this particular case. If Shea is a crook, then surely Heckheimer is a crook."

Appellant is correct in asserting that there being no evidence of appellant's previous bad character, it was error to attempt to fasten guilt upon him by asserting him to be a crook and thus predisposed to commit crime. (*People* v. *Russell*, 266 N. Y. 147; *People* v. *Zackowitz*, 254 id. 192; *People* v. *Hinksman*, 192 id. 421; *People* v. *Courtney*, 28 Hun, 589; affd., 94 N. Y. 490; *People* v. *McGraw*, 66 App. Div. 372.)

The district attorney also enlarged upon the fact that he had demanded that appellant produce the checks before referred to.

Objections are made to other specific instances in appellant's cross-examination and in the summation, where it is asserted appellant was harmed because the district attorney went too far; detailed discussion of these is omitted here. It is perhaps sufficient here to utter admonition and warning and to emphasize the rule that a district attorney should not overstep proper limits, as such misconduct of itself, if too flagrant, compels a reversal. (*People* v. *Wolf*, 183 N. Y. 464.)

These errors which have been discussed are disregarded in view of the strength of the evidence indicating appellant's guilt.

The judgment of conviction should be affirmed.

HILL, P. J., CRAPSER and HEFFERNAN, JJ., concur; BLISS, J., concurs in the result.

Judgment of conviction affirmed.