RUSSELL *v.* THE HUDSON RIVER RAILROAD COMPANY.

A laborer employed by a railroad company to work in connection with a train of cars, under an arrangement by which he was to be conveyed to his home every night in such cars free of charge, cannot maintain an action against the company for an injury sustained, while thus riding home, in consequence of the negligence of the engineer.

A memorandum made by a living witness cotemporaneously with the facts to which it relates is admissible in evidence only as auxiliary to and not as a a substitute for his oral testimony.

It must appear that there is a necessity for its introduction on account of the inability of the witness to recollect the facts after refreshing his memory by the writing.

APPEAL from the Superior Court of New-York city. The action was to recover damages for an injury sustained by the plaintiff, while riding upon a gravel train, in consequence of the alleged negligence of the defendant's engineer in running the train into Spuyten Duyvel creek. The answer alleged that the plaintiff, at the time of the accident, was a servant of the defendant and was upon the gravel train in the usual and regular course of his employment. Upon the trial it was proved that the plaintiff lived in New-York city. He was employed in loading gravel and sand, at the pits where they were dug, upon cars, for transportation to places upon the railroad where filling was required. He

and others employed by the defendant in this kind of work were paid monthly at the rate of seven shillings a day. It was the practice of those workmen who lived in New-York to come from home in the morning upon the cars of the company, and it was understood that they were to be brought back at night, paying no fare either way. On the day the accident occurred, the plaintiff went upon the cars with every load of gravel for the purpose of assisting to unload it. After the last load of gravel had been discharged, some paving stones were taken upon the cars, which proceeded towards New-York. The stones were thrown off a short distance above Spuyten Duyvel creek, and the plaintiff had then, as was testified, no further duty to perform. It appeared, however, that some of the workmen acted as brakesmen for the gravel train upon which they rode home. The accident occurred while the cars, after discharging the gravel and stone, were on their way to New-York with the workmen residing there.

The physician who attended the plaintiff was a witness in his behalf, and testified to the character of his injuries and the nature and value of the medical and surgical services rendered to him. The plaintiff's counsel then offered in evidence a written memorandum or certificate, made by the witness at the conclusion of his attendance upon the plaintiff, which stated the character of his injuries and of the treatment, medical and surgical, which had been applied. The witness testified that it was made at the time it bore date, and was true. It did not appear that the memorandum stated any facts of which the witness did not have a recollection independent of it. The memorandum was received in evidence under exception by the defendant's counsel.

The defendant moved that the plaintiff be nonsuited, on the ground that the plaintiff's injuries were received by him while in the employment of the defendant and were the consequence of the negligence of a fellow employee. The court refused to nonsuit and the defendant took an exception.

The same question was raised by an exception to the judge's charge. The plaintiff had a verdict, subject to the opinion of the court at general term, judgment upon which having been perfected, the defendant appealed to this court.

*Charles O'Conor,* for the appellant.

*Anthony L. Robertson,* for the respondent.

SELDEN, J. The general rule that where several persons are employed in the same general service, and one is injured by the carelessness of another, the employer is not responsible, is now too well settled to be disputed. (*Hutchinson* v. *The New-York, &c., Railway Co.,* 14 *Jurist,* 827; *Wigget* v. *Fox,* 36 *Eng. L. & Eq. R.,* 486; *Tarrant* v. *Webb,* 37 *id.,* 281; *Farwell* v. *Boston & Worcester R. R. Co.,* 4 *Metc.,* 49; *Hayes* v. *The Western R. R. Co.,* 3 *Cush.,* 270; *Murray* v. *S. C. Railroad Co.,* 1 *McMullan R.,* 285; *Ryan* v. *The Cumberland Valley R. R. Co.,* 23 *Penn.,* 386; *Coon* v. *The Syracuse and Utica R. R. Co.,* 1 *Seld.,* 494.) It is too late, after these numerous decisions affirming the proposition, and especially after that of this court in *Coon* v. *The Syracuse and Utica Railroad Company,* to question the soundness of the reasoning upon which it is based.

But it is said that the rule applies only to cases where the servant or agent whose negligence caused the injury and the party injured are engaged in services of the same kind, and has no application to cases where the parties, although in the employment of the same person, are nevertheless engaged in different occupations. The truth of this position may perhaps be conceded. The reason which is said in most of the cases to lie at the foundation of the rule is, that when a person engages in any employment, he voluntarily takes upon himself all the ordinary risks belonging to the particular service in which he is to be employed; and is presumed to have indemnified himself, by the terms of his engagement,

Russell *v.* The Hudson River Railroad Company.

against any special hazard known to attend it.' But the carelessness of persons engaged in business having no connection with that about which the party himself is to be employed, could hardly be regarded as such a risk. It is only those risks which may fairly be supposed to have entered into the contemplation of the parties in making the contract which fall within the rule, assuming such rule to rest upon the reason just given. Hence, if one employed to drive the private carriage of his master should, by his careless manner of driving, injure another servant of the same master, engaged in some mechanical employment, it may well be doubted whether the rule we are considering would apply.

But the present is by no means such a case. The want of proper care and skill on the part of the engineers, who manage and control the locomotives upon a railroad, is one of the most common risks attending an employment by a Railroad Company. It is true that where the particular. service for which the employee is engaged has no connection with the railroad track, or with the running of cars thereon, although relating to the general business of the company, it might with some apparent force be urged that the parties could not have contemplated or provided against this class of risks. But here the particular labor in which the plaintiff was employed involved the use of the very cars and locomotive to which the accident which caused the injury occurred, and his contract with the defendants expressly provided for his return to the city upon those cars. Whether therefore the rule in question rests exclusively upon the ground already suggested, or in part upon the ground that as the effects of the carelessness of one servant may frequently be obviated by the watchfulness of another, public policy requires the adoption of the rule as an incentive to superior vigilance, there is no doubt of its application to the present case, so far as the objection under consideration is concerned.

But the main ground relied upon to distinguish this case from those previously decided is, that at the time when the accident occurred the plaintiff was not an employee of the company but a passenger merely, and entitled to protection as such. By the arrangement between him and the defendants he was to be taken home to the city upon the gravel train at night; and he insists that his day's work was completed when the last load of gravel was deposited, and that he was under no further obligation to do anything for the company. That carrying him home was a service to be performed by the company, in consideration of the labor previously done, and constituted a part of his wages; and that it was entirely optional with him to avail himself of this service or not.

It is not, I think, entirely clear, that the defendants would not have had a right, under their agreement with the plaintiff, to insist upon his returning to the city at night. The gravel train could not be properly managed by the engineer alone. Men were required to act as brakemen in case of accident. It appears that some of the same men who worked in the gravel pit also manned the brakes. A portion of the hands employed lived in the city, and the defendants may have relied upon them to work the brakes, in case of necessity, upon the return of the train, and may have taken this into consideration in agreeing to bring them home at night.

But, conceding that the plaintiff was not bound to return, even if the defendants insisted upon it, it does not follow that while actually returning to the city with the train he was not the servant of the company. If he was a mere passenger, he was not bound to do anything to facilitate the return of the train. If an emergency arose, requiring the use of the brakes, he might refuse to raise his hand. If an obstruction was met with upon the track, he might fold his arms until the company removed it; and what he might do in this respect, every other hand returning to the city under similar circumstances might also do. Such could not, I think, have been the true relation between the parties. The

plaintiff was employed by the defendants as a day laborer. He was to be taken up at the city where he lived in the morning, and set down there at night; and he should, I think, be regarded as having been, during the entire interval, the servant of the company, and bound as such to render aid if necessary in promoting the passage of the train both to and from the city. This is decisive of the case.

But there is another question which I deem it expedient briefly to consider. Upon the trial, the plaintiff's counsel offered in evidence a memorandum made by the witness then under examination, relating to the extent of the plaintiff's injuries. The witness stated that the memorandum was made at the time of its date, which was about the time of the accident, and that when it was made he knew it to be true. The reading of this memorandum in evidence was objected to, but was permitted, It is insisted that a memorandum thus made can only be referred to for the purpose of refreshing the recollection of the witness, but can, under no circumstances, be made evidence *per se.* That unless the witness, after thus refreshing his memory, can swear to the facts from recollection, his testimony, as is said by Mr. Phillips, in his work on Evidence, "will amount to nothing." (1 *Phil. Ev.*, 289.)

In the late case of *Halsey* v. *Sinsebaugh* (15 *N. Y.*, 485), in which the same question arose, this court approved the reasoning of Messrs. Cowen & Hill, in their notes to *Phillips' Evidence* (*note* 528 *to page* 290), and adopted their conclusion. It will be seen from that note, as well as from the work of Professor Greenleaf (*Greenl. Ev.*, § 437, *and cases cited*), that the rule of Mr. Phillips has been repeatedly departed from, both in England and in this country. According to the latter authority, however, the rule in England would seem to differ slightly from that which has been adopted in this state. There, if the witness will take the responsibility of swearing positively, although he at the same time says that he has no present recollection whatever

of the facts sworn to, but bases his testimony entirely upon a memorandum made by him at the time, this is received as competent evidence, while the memorandum itself is excluded.  Here, a witness who says that after refreshing his memory by a written memorandum, made by himself at or about the time of the occurrence, he cannot recollect the facts, but that he is confident that he knew the memorandum to be correct when it was made, is not required to swear to the facts in positive terms, but the memorandum itself is received in connection with and as auxiliary to the oral testimony.   I confess my decided preference for the American practice ; since it is obvious that nothing whatever is added to the force of the evidence by the positive oath of the witness, after he has stated that he has no recollection of the facts aside from the memorandum.

It is, however, an indispensable preliminary to the introduction of such a memorandum in evidence, that it should appear, as it did in the case of *Halsey* v. *Sinsebaugh* (*supra*), that the witness is unable with the aid of the memorandum to speak from memory as to the facts. It is only as auxiliary to, and not as a substitute for the oral testimony of the witness, that the writing is admissible.   It is the duty of the court, in all such cases, to see, before receiving the memorandum in evidence, that it was made at or about the time of the transaction to which it relates, that its accuracy is duly certified by the oath of the witness, and that there is a necessity for its introduction on account of the inability of the witness to recollect the facts. In the present case, for aught that appears, the witness had a distinct recollection of all the facts, independent of the memorandum.   The latter, therefore, was improperly admitted.

The judgment should be reversed, and there should be a new trial, with costs to abide the event.

All the judges concurring, :

Judgment reversed and new trial ordered.