THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HARRY WEINBERGER et al., Appellants.

Crimes — participating in immoral play — evidence — erroneous exclusion of transcript of play made after date named in indictment — when rule that present recollection of witness must be exhausted before record of past recollection may be admitted in evidence not conclusive.

1. Where upon the trial of an indictment charging defendants with " advertising, giving, presenting, and participating in an obscene, indecent, immoral and impure drama," after the testimony of the People's witnesses was given in regard to what they had seen and heard when the play was presented, one of the defendants testified that from the date named in the indictment no change in the play was made, " either in the business or the words " and then offered in

evidence a transcript of the play, further testifying that the transcript was copied by his secretary from the " actor's script " and that he had compared it " word for word with the play as played from " the date mentioned in the indictment " and every day thereafter," the exclusion of the transcript, upon an objection for which no ground was stated, but apparently based upon the fact that it was a copy made after the indictment was found, constitutes error. The rule that the present recollection of a witness must be exhausted before a record of his past recollection may be admitted in evidence, does not apply. The transcript represented a record of the witness' past memory of the play more reliable as evidence than testimony based upon his present memory could possibly be, and it should, therefore, have been received, especially where no suggestion was made that the usual formal questions should first be asked. Nor should the defendants have been required to request the opposing party to make the objection to the testimony more definite. Under the circumstances the exclusion constituted error even if the evidence was not at the time competent, since it could be made so.

2. If testimony of witnesses as to what they saw and heard at the performance of the play after the indictment, had been excluded, since the evidence shows that these performances were exactly the same as during the time covered by the indictment, it would have been error. But the evidence rejected was rather the opinion of witnesses as to the moral value of the performance than the narration of what the performance consisted of.

*People* v. *Weinberger*, 209 App. Div. 868, reversed.

(Argued December 15, 1924; decided January 21, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 27, 1924, which affirmed a judgment of the Court of General Sessions of the Peace in the county of New York rendered upon a verdict convicting the defendants of a violation of section 1140-a of the Penal Law.

*Samuel Seabury* and *Harry Weinberger* for appellants. In order to show that the version of the play as given by the People's witnesses was incorrect in many substantial respects, the defendants offered in evidence an exact copy of the actors' script, properly authenticated and shown to be identical, word for word, with the play

as given. This important and persuasive proof was objected to, merely because it appeared that the copy was prepared by a stenographer after the indictment. The objection was sustained. The rejection of this evidence was prejudicial error, which requires a reversal of the judgment. (Wigm. on Ev. [2d ed.] § 1280, subd. 2; *Town of Barnet* v. *Town of Norton,* 90 Vt. 544; *Lombard* v. *Johnson,* 76 Ill. 599; *Walter* v. *Calhoun,* 88 Kans. 801; *D'Ambra* v. *Reinlander,* 234 N. Y. 289; *Boucicault* v. *Fox,* 5 Blatch. 87; *Fisher* v. *Kyle,* 27 Mich. 454.) It was reversible error for the court to refuse to receive the testimony of defendants' witnesses, who had seen the production between February second and its close, even though not during the short period covered by the indictment. (*McLaughlin* v. *Bohn,* 20 Misc. Rep. 338; *Chitwood* v. *United States,* 153 Fed. Rep. 551; *Schlossberg* v. *Brody,* 160 App. Div. 161.)

*Joab H. Banton, District Attorney (James Garrett Wallace, Felix C. Benvenga* and *Howard Hilton Spellman* of counsel), for respondent. The refusal to receive the manuscript in evidence was proper. (*Huff* v. *Bennett,* 6 N. Y. 337; *Halsey* v. *Sinsebaugh,* 15 N. Y. 485; *Russell* v. *Hudson R. R. R. Co.,* 17 N. Y. 134; *McCormick* v. *Penn. Cent. R. R. Co.,* 49 N. Y. 303; *Howard* v. *McDonough,* 77 N. Y. 572; *Bigelow* v. *Hall,* 91 N. Y. 145; *Peck* v. *Valentine,* 94 N. Y. 569; *Mayor* v. *Second Ave. R. R. Co.,* 102 N. Y. 572; *Nat. Ulster Co. Bank* v. *Madden,* 114 N. Y. 280; *People* v. *McLaughlin,* 150 N. Y. 365; *McCarthy* v. *Meaney,* 183 N. Y. 190; *Mattison* v. *Mattison,* 203 N. Y. 79.) Assuming that, because of the court's ruling, the defendants were prevented from calling witnesses who had seen the performance after the period covered in the indictment, for the purpose of testifying to what they saw and heard on the stage, the ruling would have been proper. (1 Wigm. on Ev. [2d ed.] § 437; 1 Greenl. on Ev. [16th ed.] § 14-t; *Comstock* v.

*Jacobs,* 84 Vt. 277; *People* v. *Harris,* 209 N. Y. 70; *People* v. *Razezicz,* 206 N. Y. 249.)

LEHMAN, J. The defendant Weinberger, as manager, and the other defendants as actors and performers, have participated in the production of a drama known as " The God of Vengeance." Because of such participation they have been indicted on the charge of " advertising, giving, presenting and participating in an obscene, indecent, immoral and impure drama, play, exhibition, show and entertainment    *    *    *    which tends and would tend to the corruption of the morals of youth or others."

At the trial the People presented the testimony of witnesses who saw the play when it was produced during the time set forth in the indictment. These witnesses described from memory the actions and gestures of the actors on the stage and the substance of the words of the play which they heard and, so far as they remembered, the exact words. The defendants produced no witnesses who contradicted or added to the testimony of the People's witnesses. Their counsel merely cross-examined the People's witnesses and upon the testimony of the plaintiff's witnesses the jury concluded that the play as produced was obscene and the defendants have been convicted of the crime for which they were indicted.

Upon this appeal we may not pass upon whether the production was obscene and immoral, nor may we consider whether the evidence presented to the jury was sufficient to enable the jury to pass upon the question submitted to it, and supports its conclusion; but one of the exceptions of the defendants, to the exclusion of evidence offered by them, raises the question of whether they were precluded from presenting to the jury evidence which might have afforded a more certain basis for a conclusion and which might have led to a different result.

After the testimony of the People's witnesses was presented in regard to what they had seen and heard

1925.] Opinion, per LEHMAN, J. [239 N. Y. 307]

when the play was presented, the defendant Weinberger testified that from February nineteenth, the date named in the indictment, no change in the play was made " either in the business or the words." He then offered in evidence a transcript of the play. He testified that the transcript was copied by his secretary from the " actor's script " and that he compared it " word for word with the play as played from February 19th, and every day thereafter." The transcript was excluded upon an objection for which no ground was stated but the context shows with reasonable clearness that the objection was understood to be based on the fact that it was a copy made after the indictment was found. It is now sought to sustain the ruling not on that ground but on the ground that the recollection of the witness as to the words and action of the play should first have been exhausted before a transcript of the actors' script could be admitted.

The rule that the *present* recollection of a witness must be exhausted before a record of his *past* recollection may be admitted in evidence, though applied in New York and the Federal courts, has not been universally accepted or approved. There are times when the record of a past recollection, if it exists, is more trustworthy and desirable than a present recollection of greater or less vividness (Wigmore on Evidence [2d ed.], § 738), and that is clearly the case here. The charge in the present case is that the *production* of the play was obscene and immoral, not that the play itself was immoral, and the testimony which was relevant upon that charge concerns rather what was said and done on the stage than what was written in the " actors' script," but it can hardly be supposed that any witness would be able to remember merely from attending a performance the exact words that were said and which accompanied the gestures which it is claimed were suggestive of evil. The suggestiveness of actions or gestures depends in large measure upon the words which accompany them. A change of a

word here or there may change the meaning and effect of a scene; an understanding of the meaning of a scene or play based upon a study of the exact words used may be different from the meaning which would be gathered from a recital of the recollection of a witness as to a performance of the scene. The jury must form its own conclusion as to the immoral tendency of the production, at least in part, from a narration of what has occurred on the stage; yet that narration must at times be incomplete, for narration of past events based on present recollection is incomplete and it must be colored by the impressions gathered by the witness, for all narration is so colored. It cannot have the accuracy of a photograph, yet it should be as accurate as it can be made. It is important, then, that the exact words which have been spoken should be laid before the jury. No reasonable man could suppose that the exact words could be obtained from a witness' recollection as well as they could be obtained from a transcript of the play checked up by the witness at some performance. To ask the witness whether he can remember the exact words of a whole play would be either a useless formality or result in obtaining evidence less reliable than could be obtained from the introduction of the transcript. As well might we refuse to receive in evidence a copy which has been compared with a lost document until the person who testified to the comparison has first exhausted his memory as to the contents of the lost document. A rule of evidence should not be permitted to become a mere fetish; the evidence offered would unquestionably be competent if a few preliminary questions had been asked of the witness as to his present recollection; the asking of these questions would have been useless and could have elicited no answers that would have helped the jury. The transcript represents a record of the witness' past memory of the play more reliable as evidence than testimony based upon his present memory

could possibly be, and it should, therefore, have been received, especially since no suggestion was made that the usual formal questions should first be asked. Perhaps only the words of the drama should have been admitted and the stage directions excluded but no objection was made on this ground or on the ground that the preliminary questions were not asked. We do not think that the defendants should have been required to request the opposing party to make the objection to the testimony more definite for the objection was not a mere general objection and the parties must have understood that it was based on the fact that the copy was made after the indictment. Under such circumstances the exclusion constitutes error even if the evidence was not at the time competent, since it could be made so. (*Tooley v. Bacon,* 70 N. Y. 34.) We do not overlook the fact that at the trial the defendants' attorney assumed the attitude that he did not dispute the testimony as to what was said and done, but claimed that no inference of immorality should be drawn from it. We have compared the oral testimony with the transcript offered of the actors' script and we feel that the picture of what had occurred takes on in some respects a different aspect if the words used in the transcript are substituted for the words which People's witnesses remember, and different inferences might have been drawn if the jury had accepted as correct the transcript which was offered.

The defendants also urge that the trial judge erred in excluding the testimony of witnesses as to what they saw and heard at performances held after the indictment since the evidence shows that these performances were exactly the same as during the time covered by the indictment. If such testimony had been refused, it would have been error, but we find that the evidence rejected was rather the opinion of the witnesses as to the moral value of the performance than the narration of what the performance consisted of.

The judgments should be reversed and a new trial ordered.

Andrews, J. (dissenting). I dissent. It is our duty to affirm where the ruling of the court below is in fact right whatever the ground upon which it may be placed. The exclusion of the script in this case was technically correct. (*Nat. Ulster Co. Bank* v. *Madden,* 114 N. Y. 280; *Russell* v. *H. R. R. R. Co.,* 17 N. Y. 134; *People* v. *McLaughlin,* 150 N. Y. 365, 392; *Vicksburg & M. Railroad* v. *O'Brien,* 119 U. S. 99; 1 Wigmore on Evidence, 835 [where the New York rule is stated]; Chamberlayne on Evidence, sec. 3507; Jones Commentaries on Evidence, sec. 883; Greenleaf on Evidence, sec. 437; 10 Ruling Case Law, 909.)

A reversal in this case means that a memorandum prepared by a third party with regard to a transaction stating the words used and the actions accompanying the words may be properly received in evidence if a witness states that it correctly represents those words and actions. Here the complaint is not so much of the language of the play as of what was actually done on the stage. The script is filled with stage directions. At one place for instance two characters are said to embrace. At another one runs her fingers through a girl's hair and buries her face in it. Nothing could be more innocent. A description, however, of what actually occurred by witnesses for the People does or may put a different construction upon the scene. Yet we are about to say that the memorandum is evidence on this question which the jury may consider.

It is very possible that had it been admitted we might refuse to reverse a judgment on that ground alone. Then we might say that the appellant should have called the attention of the trial judge to the precise objection to the evidence. Where, however, the memorandum was excluded this rule does not apply.

I think the judgment appealed from should be affirmed.

HISCOCK, Ch. J., CARDOZO and POUND, JJ., concur with LEHMAN, J.; ANDREWS, J., reads dissenting opinion, in which CRANE, J., concurs; McLAUGHLIN, J., absent.

Judgments reversed, etc.