WILLIAM A. SETZKORN, Respondent, *v.* THE CITY OF BUFFALO, Appellant.

Supreme Court, Erie County, April 2, 1926.

**Master and servant — liability of master to servant for damage to employee's automobile caused by negligence of another servant in permitting team to run away — fellow-servant doctrine does not apply — negligence is shown — evidence — declaration of driver of team not part of res gestæ — error in admitting said evidence not prejudicial.**

The fellow-servant doctrine has no application to an action by one employee to recover damages to his automobile caused by the negligence of another employee in permitting a team of horses to run away and collide with the plaintiff's automobile; the fellow-servant doctrine applies to personal injuries only.

The evidence establishes that the driver of the team, which was allowed to proceed along the street without an attendant, was guilty of negligence, and that the plaintiff, who was using his own automobile in the service of the defendant, was not guilty of contributory negligence.

An alleged statement made by the driver of the team after the accident tending to show that the horses had run away on a prior occasion was no part of the *res gestæ* and was not admissible, but since proof that the horses had run away upon a previous occasion was not an essential part of the plaintiff's case, the error in the admission of that evidence was not prejudicial to the defendant.

APPEAL from a judgment of the City Court of Buffalo, rendered in favor of the plaintiff for damages to his automobile.

*Love & Keating*, for the appellant.

*Frederick F. Grotz*, for the respondent.

HINKLEY, J. This appeal presents a very novel and interesting question: Is the common master liable for the negligent act of one servant causing damage to the *property* of a fellow-servant while both servants are engaged at the time in the service of the master?

On June 9, 1924, about midday, plaintiff was seated in his own automobile which he had parked along the southerly curb of North street in the city of Buffalo. Plaintiff, at the time, was employed by the defendant municipality as an inspector in the bureau of engineering, and was actually engaged at the time in such service, but using his own automobile without reimbursement by the defendant for such use but solely for the convenience of the plaintiff in such service. A horse-drawn street cleaning wagon, whose driver was walking alongside of the wagon, came from behind plaintiff's parked automobile, and the wagon and one horse came into collision with plaintiff's automobile. The plaintiff and the driver of the wagon were serving the same master under the same control, receiving compensation from the same source, engaged in the same general business and were fellow-servants within the rule. Had plaintiff himself been injured, he could not recover from the common master for the negligent act of his fellow-servant. (*Boldt* v. *New York Central R. R. Co.*, 18 N. Y. 432, and kindred cases.)

Apparently, plaintiff and the driver of the wagon were in service in the same department of streets of the master. But if not, the fellow-servant rule would have applied had plaintiff been personally injured, as the different department rule has been expressly rejected in this State. (*Slater* v. *Jewett*, 85 N. Y. 61.)

Upon the doctrine of *respondeat superior*, a master is charged with the negligent act of his servant which injures a third person. Negligence of one servant, which causes personal injuries to a fellow-servant, is not chargeable against the master. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521, 528.)

Exhaustive research has discovered neither precedent nor comment upon the question at issue of the extension of the fellow-servant rule beyond injuries to the person of a fellow-servant to that of injuries to the property of the fellow-servant.

Recourse to the origin and reasons given for the adoption of the fellow-servant rule must be had before a determination can

be made of the question whether the responsibility of the master should be further excused by relieving him of the consequences of the negligent act of one servant, which results in damage to the property of a fellow-servant.

The fellow-servant rule, which is an exception to the ordinary rule of agency, finds its authoritative origin in England in 1837. (*Priestley* v. *Fowler*, 3 M. & W. 1; Murph. & H. 305.)

Almost at the same time it appeared in the United States in 1841 and 1842. (*Murray* v. *South Carolina R. R. Co.*, 1 McMull. 385; *Farwell* v. *Boston & W. R. R. Corp.*, 4 Metc. 49.)

The fellow-servant rule is firmly fixed as the law of this State. " It is too late [1858], after these numerous decisions affirming the proposition * * * to question the soundness of the reasoning upon which it is based." (*Russell* v. *Hudson River R. R. Co.*, 17 N. Y. 134.)

Various reasons for the fellow-servant rule have been advanced:

1. The receipt of wages differentiates the position of a servant who is suing his master from that of a person who is suing a stranger.

2. Obligation of master is fully satisfied by the employment of competent servants.

3. The master does not contract with his servant to do his business in person.

4. The negligence of a fellow-servant who was selected with due care by the master is one of the risks which each servant accepts and may be implied from his entering and remaining in his employment.

5. Public policy demands the enforcement of the rule which results in making each servant more cautious, thereby benefiting fellow-servants, master and strangers.

Neither the doctrine of *respondeat superior* nor the fellow-servant rule is founded in abstract or natural justice. Both must be placed upon the foundation of public policy. (*Crispin* v. *Babbitt*, 81 N. Y. 516, 527, dissenting opinion by EARL, J.)

We are not concerned with the question of an extension of the doctrine of *respondeat superior*, as that doctrine is firmly established beyond the power of the court to vary. But we are required to determine the limitation or extension of the fellow-servant rule. There is no established public policy and no logical reason apparent why the fellow-servant rule should be extended to excuse a master whose servant, while actually in service, negligently damages the property of a fellow-servant. It is not one of the risks contemplated by the master or servant, nor compensated for in increased wages. So far as concerns the property of a fellow-servant that is being used in the service of the master as a convenience to the fellow-

servant, it is as though his property were that of a stranger to whom the master would be liable for the negligent act of his servant.

The fact that the driver of the wagon and the plaintiff were fellow-servants of the defendant and engaged in such service at the time of the collision, does not, therefore, relieve the defendant from its responsibility for damages to plaintiff's property due to the negligent act of the driver of the wagon.

Counsel for appellant contends and the trial was had upon the theory that proof was essential that the horses drawing the cleaning wagon were running away at the time and had, prior to that time, displayed such tendencies. The proof disclosed that there was no driver upon the wagon, and that the attendant was engaged in following alongside of the wagon shoveling dirt from the street into the wagon, and that after the collision the driver ran up and caught the horses. As plaintiff was concededly not guilty of contributory negligence, this proof made out a *prima facie* case. In the absence of any explanation upon the part of the defendant, judgment in favor of the plaintiff was proper.

" The witness did not testify that he was looking when the horses became detached, but that his attention was attracted by the stopping of the car, and that he then looked and saw the horses running away from the car. But this was sufficient to make out a *prima facie* case. The fact that the horses were unattended and unfastened in the street was, unexplained, evidence of negligence against the defendant." (*Unger* v. *42d St., etc., R. R. Co.,* 51 N. Y. 497, 500; *Norris* v. *Kohler,* 41 id. 42; *Howley* v. *Kraemer,* 36 Misc. 190; *Pearl* v. *Macaulay,* 6 App. Div. 70.)

Testimony by plaintiff of an alleged statement made by the driver of the wagon after the accident tending to prove that the team of horses which collided with the plaintiff's automobile was the same team that ran away upon a prior occasion, was not part of the *res gestæ,* and clearly inadmissible. (*Kay* v. *Metropolitan St. R. Co.,* 163 N. Y. 447.)

Objection was made and exception taken by defendant's counsel to the alleged admission upon the part of the driver of the wagon. But as proof that the horses had run away upon previous occasions was not essential to plaintiff's case, the error in the admission of that evidence was not prejudicial to the defendant.

Judgment of the lower court affirmed, with costs.