G. Robert Witmer, J.
Defendant has moved to set aside the jury’s verdict in the sum of $38,500 and for dismissal of the complaint or for a new trial, upon several grounds, to wit: (1) that there is no evidence of negligence on the part of the defendant, (2) that the court erred in excluding a history of the accident contained in the hospital record, (3) that the court erred in its charge and submission of the case to the jury, and (4) that the verdict is excessive. These matters will be considered in the order stated.
(1) Plaintiff fell, the jury found, on the sidewalk on the west side of Thurston Eoad, adjacent to defendant’s garage by reason of mounds or a pile of snow which caused a dangerous or unsafe condition for pedestrians. The plaintiff and several of her witnesses, to wit, Frank J. Vicaretti, Officer Mauro Imperial and Dean Sehm, gave testimony to support the finding of such condition. Defendant’s president did not deny existence of the condition, although he admitted that he was at the premises most of the day of the accident. Of course the defendant could not be held liable because of the mere presence of snow on the sidewalk, even though a dangerous condition was created thereby. Its liability was predicated upon the jury’s finding that the defendant by its affirmative act placed upon the ivalk the snow which caused plaintiff to fall.
There was evidence in the case from which the jury could and did find that the defendant created the dangerous condition. The evidence showed that on February 19, 1960 there had been a heavy snowfall of 14.7 inches, and the snow continued to fall until 3 o’clock p.m. on February 20 to the additional extent of 6.9 inches, making a total snowfall of 21.6 inches in the two days. Plaintiff fell on February 20 between 6:30 and 7 o’clock p.m. Defendant maintained a large gasoline service station at this corner, and its president, Leslie Fincher, operated a power shovel to keep the service area clear of snow during the storm, Mr, *611 Fincher testified that in plowing the snow from the station service area he also plowed the entrance driveways and the sidewalks, including the sidewalk in question from Chili Avenue southerly to the northeast corner of the garage building. His testimony is nebulous concerning his plowing of the sidewalk southerly from that point along the east side of the garage building. Mr. Vicaretti testified that he was then the official for the City of Rochester in charge of the removal of snow and ice, and that in response to complaints he went to defendant’s garage at about noon on February 20, the second day of the storm, and saw Mr. Fincher plowing snow onto the sidewalk just east of the defendant’s garage building! He says that he ordered Mr. Fincher to clear such snow off the walk, that Mr. Fincher indicated that there was so much snow that he did not know what to do with it and asked Mr. Vicaretti what could be done with the snow, and Mr. Vicaretti replied that he could dump it into the river through the Smith Street Bridge. Mr. Vicaretti testified that Mr. Fincher promised to clear such snow from the walk, and he further testified that two or three days later he found that defendant had not removed the snow from the walk, and so the city cleared it with its own shovel.
On cross-examination Mr. Vicaretti vacillated as to the exact time or day of his conversation with Mr. Fincher, but he insisted that it was at about the end of the snowstorm. Such testimony as to time is supported by Mr. Vicaretti’s testimony that Mr. Fincher was plowing snow at the time, and Mr. Fincher’s testimony that he plowed all of the snow at the station and kept the station open and clear by plowing the snow. No snow fell after 3 o ’clock p.m. on February 20 until several days later.
The motion to strike Mr. Vicaretti’s testimony, in my judgment, was properly denied.
As above noted, Mr. Fincher testified that he plowed snow on the sidewalk to a point a few feet from where plaintiff fell, but he denied leaving any plowed snow on the walk. Some of Mr. Fincher’s testimony, including that read from the examination before trial, was inconsistent, and at times he denied knowledge of facts which an alert businessman in charge would be expected to know. The jury may have considered those factors in weighing his testimony that he did not plow snow onto the walk and leave it there, and that all of the snow in the service area was placed in three piles on the edges of defendant’s property. The plaintiff argued that there was far too much snow to be contained in the three piles where Mr. Fincher said the snow was placed.
The cases cited by defendant concerning negligence of an adjoining owner are distinguishable. The condition on the *612 sidewalk where plaintiff fell was established, and a question of fact was raised for the jury upon all the evidence as to whether or not the defendant created the condition.
(2) When plaintiff was admitted to the hospital a fourth year medical student, now Dr. Jacobsen, wrote a history of the accident as did also the admitting Dr. Korn. In Dr. Jacobsen’s history was the statement that plaintiff said she fell while jumping over a puddle. Defendant offered that statement into evidence. It was excluded upon the authority of Williams v. Alexander (309 N. Y. 283). Defendant then called Dr. Jacobsen as a witness and handed him the said history of the accident to read, which the doctor began to do aloud. The court immediately instructed the doctor that he could read the history to himself and could use it to refresh his recollection, and that if it did refresh his recollection he could testify concerning what plaintiff had told him as to the manner in which the accident happened. After reading the history -to himself the doctor said his recollection was refreshed, and he proceeded to testify as to everything that was in the history concerning how the accident happened. He also said that his memory was so refreshed that he was able to, and did, testify as to matters not contained in the history. Defendant then offered the history into evidence. It was excluded; and defendant asserts that the exclusion was reversible error. The ruling was correct. (National Ulster County Bank v. Madden, 114 N. Y. 280; Russell v. Hudson Riv. R. R. Co., 17 N. Y. 134, 140.) In the Russell case (supra) at page 140 the court said: “ It is the duty of the court, in all such cases, to see, before receiving the memorandum in evidence, that it was made at or about the time of the transaction to which it relates, that its accuracy is duly certified by the oath of the witness, and that there is a necessity for its introduction on account of the inability of the witness to recollect the facts. In the present case, for aught that appears, the witness had a distinct recollection of all the facts, independent of the memorandum. The latter, therefore, was improperly admitted. The judgment should be reversed”.
As the above decisions show, not only was it not prejudicial error to exclude the proffered exhibit, but it would have been error to receive it.
(3) No exception was taken to the court’s main charge. After the court granted defendant’s special requests to charge, plaintiff made a request for a charge that if the defendant was negligent in exercising its special privilege to park its vehicles between the sidewalk and the garage, and such negligence contributed to the accumulation of snow upon which plaintiff fell, *613 defendant could be found liable by reason thereof; and the request was granted. Defendant took exception. To avoid discussing the matter before the jury the court stated he would submit to the jury special findings of fact concerning defendant’s alleged negligence, and the jury was sent out. Discussion with counsel and a review of the pleadings then revealed that, regardless of whether plaintiff’s said request to charge would otherwise be correct, the complaint did not support the theory of negligence underlying such request. The court then called the jury back and told them that plaintiff’s said request was denied and directed that they could find the defendant negligent only if they found that the defendant affirmatively plowed snow onto the walk and thus created a dangerous condition upon which the plaintiff fell, or piled snow adjacent to the walk in such a manner that it fell upon the walk and created a dangerous condition upon which the plaintiff fell, and stated to the jury that special findings of fact concerning the defendant’s alleged negligence would be submitted to them in writing to answer. The jury then retired to deliberate. In the presence of both counsel the court then dictated the two special questions of fact, and they were reduced to writing and submitted to the jury without objection. The jury answered the questions consistently with their general verdict.
Although defendant’s counsel took no exception to the main charge, on this motion he suggests that the verdict was large because of the court’s instruction to the jury not to bring in a compromise verdict. The charge was, if anything, favorable to the defendant, and at the time the defendant was apparently glad to have the advantage of it without excepting thereto. This was an appropriate case for such charge. Admittedly the plaintiff suffered a severe injury. Defendant was entitled to a charge that the jury should not, in sympathy for the plaintiff, give her “ something” even though defendant was not liable. Conversely, it was proper to instruct the jury that if the plaintiff was found entitled to recover, they should not, in sympathy for the defendant, give the plaintiff less than she was entitled to recover. No error was committed in this charge.
(4) Lastly, the defendant contends that the verdict is excessive.
That the plaintiff’s injuries were severe is unquestioned. Apart from the broken bones and the pain resulting therefrom, the plaintiff had to undergo two operations for an open reduction of the breaks, with insertion of metal screws into the bone. Even then one of the pieces could not be held in place. This has resulted in a loss of motion of the left ankle, and a wearing of *614 the surfaces of the joint, which has been very painful. The doctor testified that, as a result of this accident, plaintiff has permanent traumatic arthritis in the joint, which is painful, and that she has a 50% permanent partial disability. Plaintiff has two large scars on her ankle and leg where the operations were performed. She walks with a decided limp. The doctor testified that plaintiff’s anide will become increasingly painful and that nothing can be done to alleviate the pain but an operation to fuse the joint. He testified that even such operation would not ¡liminate all pain, because after fusion there would still be some lateral motion in the ankle with some attendant pain. The fusion would eliminate completely the extension and flexion of the ankle.
Considering plaintiff’s medical expenses and reasonable loss of earnings, and the plaintiff’s pain and suffering and the permanent injury with which she is left, I do not deem this verdict excessive.
The parties had a fair trial, and the jury were unanimous in their verdict. I have never seen a more attentive, alert, and intelligent appearing jury. Their foreman is an author and the City Historian of Bochester, Mr. Blake McKelvey. The jury demonstrated that they understood the facts and issues in the case and they acted clearly within their province.
I know of no ruling or conduct upon the trial prejudicial to the defendant. The verdict is supported by the evidence; and the motion to set it aside or reduce it is denied.