THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PASQUALE CAPRIO, Appellant.

Second Department, March 14, 1966.

146

Peter J. O'Connor for appellant. ·

William Cahn, District Attorney (Richard D. Longworth of counsel), for respondent.

HOPKINS, J. The defendant was indicted and convicted of the crimes of burglary in the third degree and grand larceny in the second degree. Proof of his guilt depends in large part on the testimony and a pretrial written statement of Peter Thomashefsky, an alleged accomplice. The defendant challenges that testimony and, in particular, the admissibility of that statement. We deal with those questions here.

On a Sunday evening, in June, 1962, Thomashefsky rang the doorbell of an Elmont (Nassau County) residence. Receiving no answer, he entered the backyard, broke a cellar window,

crawled into the basement and ascended to a bedroom where, after rifling bureau drawers, he stole jewelry and money. An armed neighbor, who had observed Thomashefsky's entry, shot at and captured him as he fled the residence. Upon his arrest by the hastily summoned police, Thomashefsky's pockets, at the scene of the burglary, disgorged the jewelry and money and there he readily admitted his crimes, described his capture and claimed that he was alone.

Of Thomashefsky's guilt there is no dispute among us for, though indicted with the defendant, Thomashefsky had pleaded guilty and had received a suspended sentence prior to the time of defendant's trial. Whether defendant was proved to have been Thomashefsky's accomplice is the issue upon which we differ.

Prior to Thomashefsky's crimes, the defendant and he had been seen in a car parked by the defendant around the corner from the burgled residence. Thereafter, the defendant raised the car's hood and Thomashefsky walked down the block. Within 10 minutes Thomashefsky burglarized the residence and was captured. At the time of Thomashefsky's arrest the defendant was sitting in the car, its hood down. Upon inquiry by a police officer, the defendant denied that he had been accompanied by anyone and claimed that he awaited no one. He was taken to a police station where, in the presence of Detective Kelly, he and Thomashefsky confronted one another. Thomashefsky denied that he knew the defendant, and defendant repeatedly denied that he knew Thomashefsky, or had ever seen him, or had been with him in the defendant's car prior to the burglary.

On the morning of the following day, Thomashefsky signed a typed confession, after Detective Kelly, who had made no promises to Thomashefsky, had read it to him, and after Thomashefsky himself had read it. In his confession Thomashefsky recited that, on the previous day, he had met the defendant whom he had known for about five or six years; that Thomashefsky had asked the defendant if he wanted to drive to a beach; and that, while driving in Nassau County, the car had overheated, whereupon defendant parked. Thomashefsky's confession further stated that: " While we were sitting in the car I said Jack [the defendant] I am going to see if I can get some money. I told him to wait for me that I was going to break into a house. Jack said, ' O.K., I'll wait for you.' Jack lifted the hood of the car and he was standing by the car when I walked away.''

At his trial, proof of the defendant's guilt as Thomashefsky's accomplice turned upon the admissibility of Thomashefsky's confession as past recollection recorded, as affected by the fact

that Thomashefsky, produced as a People's witness, testified that beyond telling the defendant that he would soon return he was unable to recall what he had said to the defendant when he walked from the defendant's car. Thomashefsky was able to describe his commission of the burglary and larceny, his capture and the defendant's and his own false denials that they knew one another. However, with respect to the defendant's role as his accomplice, Thomashefsky's memory yielded nothing. He testified that he had met the defendant in the early afternoon of Sunday, June 17, but added that he, Thomashefsky, had been drinking heavily. The defendant, who was in his car, had asked Thomashefsky for a couple of dollars. Thomashefsky said that if the defendant would take him for a drive he would get money. They drove to a bar where Thomashefsky had some drinks. Again Thomashefsky invited the defendant to go for a ride so that Thomashefsky could get money. They drove about, stopped at another bar and then drove to Elmont where, because of mechanical difficulty, the defendant parked his car. Thomashefsky told the defendant to wait for him, that he would return shortly, and walked from the car. At this point in Thomashefsky's testimony the People, aware of the contents of Thomashefsky's confession, sought to elicit from him his communication to the defendant of his intention to commit a burglary and the defendant's agreement to await Thomashefsky's return. Instead, Thomashefsky testified:

" Q. What else, if anything, did you tell him when you parked the car and you told him to wait for you, what if anything else did you tell him? A. Well, I'll be honest with you, when he parked the car I was looking for another bar but instead I went around the corner, kicked in a window which I admitted to the detectives and broke into the woman's place.

" Q. All right. Now, before you did that, did you say anything else to Caprio other than ' Wait for me '? A. That I don't know, Mr. District Attorney; believe me, I don't know.

" Q. Well, let me ask you then, did you sign a statement for Detective Kelly? A. Yes, I did. I have read the statement and what I say I believe it to be true."

Thomashefsky's confession was given to him for the purpose of refreshing his recollection, but he still could not recall having said anything else to the defendant when he left the car. Swearing nevertheless that the contents of his confession were true, he claimed that his intoxication was an explanation for his lapse of memory. He added, however, that he had been unable to tell the police why he had burgled the house and he claimed that he still did not know why he had done it. Notwithstanding

his assertions of intoxication at the time of the commission of the crimes and lack of recollection at the time of trial, Thomashefsky repeatedly swore that when he signed his confession he believed its contents to have been true. Indeed, Thomashefsky testified that his confession was "absolutely true."

The defendant drew from Thomashefsky that he had been convicted about 15 times, though the nature of the crimes was not shown. The defendant elicited from him that he had pleaded guilty to the indictment and had received a suspended sentence. The defendant openly suggested to him that, if Thomashefsky was intoxicated at the time of the crimes, "there is no way that you can say that this statement is the truth, is there?" Thomashefsky thereupon, for the first and only time during the trial, agreed that he did not think that he could swear that the statements contained in his confession were true. The court then put the following questions to Thomashefsky:

"The Court: Now, wait a minute. Let me ask him some more questions. Mr. Witness, Did you understand me when I asked you clearly whether the statements embodied in [the confession] were correct? Were they correct?

"The Witness: Yes, they were correct.

"The Court: Were they true?

"The Witness: Yes, they were true.

"The Court: Did you sign it?

"The Witness: Yes, I did."

Thomashefsky's confession was then received as past recollection recorded and was read to the jury as part of Thomashefsky's testimony on behalf of the People.

The defendant makes two arguments for reversal. First, he claims that Thomashefsky's testimony was not corroborated (Code Crim. Pro., § 399). He says that his false denials are consistent with innocence as well as with guilt, because it may be inferred that he probably knew of Thomashefsky's criminal record and had heard the gun shots of the armed neighbor who captured Thomashefsky. Assuming that the defendant's probabilities were facts from which an inference consistent with innocence might be drawn, nevertheless there is no requirement that corroborative evidence must be consistent with guilt (*People* v. *Ogle,* 104 N. Y. 511, 515; *People* v. *Bloodgood,* 251 App. Div. 593; *People* v. *McPorland,* 191 App. Div. 795; *People* v. *Sweeney,* 161 App. Div. 221, affd. 213 N. Y. 37; *People* v. *Freeman,* 160 App. Div. 640, affd. 213 N. Y. 688; *People* v. *Everhardt,* 42 Hun 659, affd. 104 N. Y. 591). Nor, clearly, is this a case of wholly circumstantial proof, for Thomashefsky's confession constitutes direct testimony that he told the defend-

ant of his criminal purpose and that defendant agreed to await him in his car and drive him from the scene of the crime (cf. *People* v. *Eckert,* 2 N Y 2d 126; *People* v. *Bearden,* 290 N. Y. 478; *People* v. *Woltering,* 275 N. Y. 51). Insofar as the defendant's false statements to police officers concerning his knowledge of Thomashefsky constitute evidence of a consciousness of guilt, they were admissible to corroborate Thomashefsky's testimony (see *People* v. *Dixon,* 231 N. Y. 111, 116; *People* v. *Ruberto,* 10 N Y 2d 428; *People* v. *Leyra,* 1 N Y 2d 199, 208; *People* v. *Deitsch,* 237 N. Y. 300, 303; *People* v. *Gorski,* 236 N. Y. 673; *People* v. *McGuire,* 135 N. Y. 639, 641). False denials by one found near the scene of a crime that he knows the accused perpetrator, that he accompanied the perpetrator to a point near the scene and that he remained in a car after the perpetrator had left the scene raise an inference that he was conscious of guilt of the crime committed because he was aware of his companion's purpose and was present to assist him in escaping.

Second, the defendant argues that Thomashefsky's written confession was inadmissible as past recollection recorded. The application of the rule of past recollection recorded to Thomashefsky's confession raises three novel questions. As far as we have been able to determine, the rule has never been applied to a confession nor has it ever been applied when the writing offered recited facts observed when the author was allegedly intoxicated or under some other impediment seriously affecting his senses and intellect. Last, we have found no case in which the author of the writing gave contrary oaths concerning whether he believed the writing true when made.

The rule of past recollection recorded may be simply stated. When a witness is unable to testify concerning facts recited by or through him in a memorandum, the memorandum is admissible as evidence of the facts contained therein if he observed the matter recorded, it was made contemporaneously with the occurrence of the facts recited and the witness is able to swear that he believed the memorandum correct at the time made. (See 3 Wigmore, Evidence [3d ed.], §§ 745–754.) When admitted, the memorandum becomes part of the witness' present testimony. The defendant complains that the confession was not made contemporaneously with the facts recited because it was made 26 or 28 hours after Thomashefsky's commission of the crimes. There are cases containing, in various forms, the idea that memoranda offered under the rule should have been made at or about the time of the transaction recorded, but no hard and fast time limit has been established. Taken together,

the sense of the cases points towards the issue whether, at the time of the making of the writing, the circumstances recorded were fairly fresh in the witness' mind. (See 3 Wigmore, *op. cit., supra,* § 745.) In the case at bar, an interval of 26 or 28 hours would not, of itself, bar Thomashefsky's confession (cf. *Clark* v. *National Shoe & Leather Bank,* 164 N. Y. 498).

The defendant complains that there is no guarantee of the accuracy of the confession. He points to Thomashefsky's contrary oaths concerning whether he believed the confession true at the time it was made and the fact that Thomashefsky swore that he was intoxicated at the time of the happening of the facts recorded. In short, the defendant contends that the trial court was bound to accept Thomashefsky's testimony that he was intoxicated at the time he committed the crimes.

When passing upon preliminary questions of fact in determining the admissibility of evidence, a trial court is not bound to accept the uncontradicted testimony of a witness. A trial court observes a witness, hears his testimony and therefore is in a special position to evaluate and integrate that evidence with other facts before it. The court below undoubtedly noted that, though the confession matched the testimony of Thomashefsky and the People's other witnesses, the only matter in the confession about which Thomashefsky suffered a lack of recall was that in which he had implicated the defendant. Thus, Thomashefsky's claimed intoxication on the day of the crime did not prevent him on the day following the crime from recalling in detail what had occurred on the previous day. Moreover, if the confession were true, as Thomashefsky repeatedly swore, his sudden reversal of his ability to swear to the truth of its contents only after the defendant openly had suggested to him that, if he had been drunk at the time of the commission of the crimes, he would be unable to swear to the truth of the confession was flagrantly suspicious. We perceive no reason why Thomashefsky would confess to crimes and implicate an allegedly innocent defendant when, at the trial, no claim was made by him or the defendant that Detective Kelly had exercised duress or practiced any fraud or inducement upon him when he offered Thomashefsky's own statement to him for his signature. Nor do we detect any evidence of a veiled coercion which could have influenced Thomashefsky when he swore that the confession was true. Had sentencing of him been impending, there would have been grave reason to suspect his implication of the defendant (*People* v. *Crum,* 272 N. Y. 348, 353). However, Thomashefsky had received a suspended sentence before the time that he testified and it does not appear that he was in custody for or

charged with any other crime. Finally, had Thomashefsky adamantly persisted in his sudden inability to swear to the truth of his confession, a trial court might have been hesitant in admitting that writing. However, Thomashefsky, upon the trial court's inquiry, immediately reversed field and embraced his previous testimony supporting the truth of the confession.

In our opinion, the trial court properly decided in favor of the admissibility of Thomashefsky's confession. Its decision (see Model Code of Evidence, rule 504, Comment *a,* Illustration 1) did not compel the jury to accept Thomashefsky's confession as the truth. The jury was free to give the confession's contents no weight by rejecting Thomashefsky's credibility or accepting his claim of intoxication. Nor does the criminal nature of the action inhibit the application of the rule of past recollection recorded (see *People* v. *Weinberger,* 239 N. Y. 307; *People* v. *McLaughlin,* 150 N. Y. 365; see, also, Fisch, Evidence, § 339; *Kinsey* v. *State of Arizona,* 49 Ariz. 201; *State* v. *Gross,* 31 Wn. [2d], 202). Wigmore suggests that "in particular instances" when an interested party prepares the writing for use in litigation the writing may be infected with untrustworthiness (3 Wigmore, *op. cit., supra,* § 748). We do not find anything in the case at bar that suggests uncertainty about Detective Kelly's preparation of the confession and we agree with McCormick's view that "This danger of partisan suggestion * * * seems a matter rather to be considered on credibility than as a ground of exclusion" (McCormick, Evidence, § 279, n. 2). The fact that the writing involved in *People* v. *Weinberger* (239 N. Y. 307) had been prepared by a defendant therein after the indictment did not ban its use (see *Guy* v. *Mead,* 22 N. Y. 461, 466–467). Last, we note that unlike a case in which a witness is unable to swear that a writing was true when made (*Hodas* v. *Davis,* 203 App. Div. 297), barring a court from admitting the writing into evidence, the trial at bar involved two contrary oaths, of which that disaffirming an ability to verify the writing was succeeded by the required verification.

The judgment should be affirmed.

CHRIST, J. (dissenting). This conviction rests on inadmissible evidence which, even when considered, does not establish defendant's guilt beyond a reasonable doubt. The codefendant, Thomashefsky, committed a burglary some distance from where the defendant sat in a parked automobile which had come to a stop because of mechanical difficulty. The defendant's complicity turns upon whether he knew the codefendant was about to commit that burglary and had, agreed to await his return.

The evidence to support this is found only in a typewritten confession signed by Thomashefsky some 26 or 28 hours after he committed the crime, which, insofar as it is pertinent, reads: "I had not seen Jack for quite a while but in the past two months he has been around the neighborhood. Yesterday I met Jack on Myrtle Avenue in front of my house. He was in his car a 1953 white Chevrolet Sedan. The car had white and blue plates on it but I do not know what state that is from. I asked Jack if he wanted to go for a ride down to the beach. We rode out to Long Island and got lost. I think the car started to overheat so we stopped in a residential area. While we were sitting in the car I said Jack I am going to see if I can get some money. I told him to wait for me that I was going to break into a house. Jack said 'OK, I'll wait for you.' Jack lifted the hood of the car and he was standing by the car when I walked away."

However, as a witness for the People, Thomashefsky testified that he had been drinking Friday night, Saturday and most of Sunday, the day of the commission of the crime. He had met the defendant that Sunday afternoon, had stopped in a bar with him in Brooklyn and had then taken a ride with him, during which they had stopped at still another bar. He then testified:

"Q All right. Now, after you left the parkway where did you go, could you tell us, with the automobile? A Well, the automobile started to act funny and I told Jack to pull over and he pulled over and I got out of the car and I told him to wait for me, that I would be right back and I seen him lift up the hood and I left.

"Q What else, if anything, did you tell him when you parked the car and you told him to wait for you, what if anything else did you tell him? A Well, I'll be honest with you, when he parked the car I was looking for another bar but instead I went around the corner, kicked in a window which I admitted to the detectives and broke into the woman's place.

"Q All right. Now, before you did that, did you say anything else to Caprio other than 'Wait for me'? A That I don't know, Mr. District Attorney; believe me, I don't know.

"Q Well, let me ask you, then, did you sign a statement for Detective Kelly? A Yes, I did. I have read the statement and what I say I believe it to be true."

Thomashefsky was given his confession to read and then testified as follows:

"Q Now, I ask you whether you can tell us now whether or not you said anything else to him other than 'Wait for me'?

154

* * * A I don't remember if I said anything to Caprio.

" Q You don't remember now, is that what you are telling us? A Now I don't remember.

" Q You just read People's Exhibit 5 for Identification. A It's true, what I said here is true.

" Q What you said in there is true? A But at the time I got out of the car I don't remember saying anything to him. I was too ossified. * * *

" Q That statement [Exhibit 5 for Identification] was true at the time you made it, is that correct? A That is correct."

The confession was ultimately admitted into evidence as a past recollection recorded. In view of the witness' testimony that he was "too ossified" at the time he left the defendant in the car to remember any conversation with him and that, in fact, he had left the car to search for another bar, not to commit a burglary, this was error. Not only did the witness fail to give the requisite "guarantee of correctness" (3 Wigmore, Evidence [3d ed.], §§ 738, 745-747) to the statement concerning the defendant embodied in his confession, but, in effect, he disclaimed that statement. Moreover, even considering, as testimony, the codefendant's statement implicating him, I cannot agree that the defendant's intent to participate or assist in the commission of a burglary has been satisfactorily established. At best, the codefendant, who was the actual burglar, was an unreliable witness. He was a known criminal with 15 previous convictions, who was not only too drunk at the time to remember what had been said, but whose testimony was, on its face, contradictory. In my opinion, the defendant was not proved guilty beyond a reasonable doubt. I would reverse this conviction and dismiss the indictment.

UGHETTA, Acting P. J., BRENNAN and HILL, JJ., concur with HOPKINS, J.; CHRIST, J., dissents in a separate opinion and votes to reverse the judgment and dismiss the indictment.

Judgment affirmed.